### H. D. FOSS AND COMPANY, INCORPORATED, *vs.*
### RENTON WHIDDEN & others.

Suffolk.    October 22, 1925. — December 1, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Contract*, Construction, Performance and breach, In writing.  *Landlord and Tenant*, Construction of lease.  *Damages*, Interest.

The owner of a building under construction in that part of Boston which was formed by filling what previously had been part of the harbor, where at times the soil is filled with water and the pressure of the water is very strong, agreed in writing with a manufacturer that, when the building was completed, he would let it to the manufacturer for a period of ten years by a lease, a copy of which was annexed to the agreement, and that he would construct the building according to certain plans and specifications which, among other things, contained requirements, "Wall and floor of basement . . . are to be waterproofed with cement waterproofing and the waterproofing is to be guaranteed for ten years . . . basement floor . . . must be reinforced if necessary to resist the upward pressure."  During the construction, the manufacturer's superintendent called the owner's attention to what he feared was not proper waterproofing which would cause trouble from water, and the owner replied, " . . . there would be no water in the basement." A lease later was executed according to the agreement, and the manufacturer took possession.  Thereafter, water oozed through the cement floors into the basement.  The manufacturer by a suit in equity sought to require specific performance of the contract, and damages.  · *Held*, that

(1) The intention of the parties, as shown by the language of the contract, was that the building should be so constructed as to resist the upward pressure of the water and make the basement floor water tight;

(2) The mere fact, that the lease was made after the contract, did not preclude the plaintiff from recovering upon the contract;

(3) The plaintiff was entitled to relief.

The plaintiff entered into possession of the building which was the subject of the suit above described before January, 1914, and it was completed in that month.  In August, 1916, the parties agreed that the plaintiff might make the basement water tight without prejudice to his rights. The suit was brought in June, 1917.  A master found that it was "more than six years after this bill was filed and more than three ·years after the plaintiff had incurred the expense necessary to make the basement water tight before the case was brought to trial," and that this delay was not caused by the defendant.  There was no finding indicating that the plaintiff caused the delay.  The master found damages, but allowed no interest on the damages found.  A judge who heard the case on the master's report and on an amendment to the bill, filed in 1925,

setting forth a claim for additional damages suffered by the plaintiff after the bill was filed, ordered a decree awarding damages found by the master and additional damages covered by the amendment, but allowed interest only from the date of the decree. It appeared that all damages were suffered before July, 1920. The plaintiff appealed. *Held*, that

(1) Nothing appeared to take the case out of the general rule, that, in assessing damages of this kind, a plaintiff is not to be awarded interest as interest, but that he should be placed in the same position in reference to the injury as if the damages directly resulting from the injury had been paid immediately;

(2) Interest from July, 1920, should have been allowed as a part of the plaintiff's damages.

BILL IN EQUITY, filed in the Superior Court on June 14, 1917, and afterwards amended, for specific performance of an agreement as to the construction of a building at 217–231 Friend Street in Boston, and the letting thereof to the plaintiff, and for damages.

In the Superior Court, the suit was referred to a master. Material facts found by the master are described in the opinion. Both parties filed exceptions to the report. The suit was heard in January, 1925, by *Morton*, J., upon the pleadings, the master's report and exceptions thereto. Findings and rulings then filed by the judge allowed damages accrued before the filing of the bill, and disallowed those accruing after that date. In February, 1925, an amendment to the bill to include a prayer for damages suffered after the bill was filed was allowed, and the case was further heard by the judge upon the matter of such damages. By order of the judge, an interlocutory decree was entered overruling the exceptions to the report and confirming the report, and a final decree was entered "that it appears that the specific performance prayed for in the plaintiff's bill has been rendered unnecessary by repairs made by the plaintiff under a stipulation between the parties; that the bill is retained for the purpose of assessing the damages sustained by the plaintiff; that the defendant, Renton Whidden, be and hereby is ordered to pay to the plaintiff damages in the sum of $9,450 with interest on the same from the date hereof at the rate of six per cent. per annum until the same shall be fully paid." Both parties appealed.

*D. F. Carpenter*, for the defendants.

*A. P. Stone*, for the plaintiff.

CARROLL, J.    The defendant Whidden (hereinafter spoken of as the defendant) owned a lot of land adjoining in the rear the plaintiff's place of business.   On April 14, 1913, the defendant and plaintiff entered into a written contract covering the construction of a building on the defendant's land, and on December 17, 1913, the building at that time being nearly finished, the parties executed a lease in the form contemplated by the written contract.   The plaintiff entered into possession of the property under the lease before the first of the year.   The building was completed in January, 1914. The suit in equity is to recover under this contract.

The written contract, after reciting the intention of the defendant to erect a building upon the above mentioned lot, provided, that upon its completion, the defendant was to lease the building to the plaintiff for the term of ten years, the lease to be in the form attached to the contract; that the lessor was to construct the new building according to plans and specifications identified by the signatures of the parties, the obligation of the lessor being confined to the plans and specifications.   In the specifications there was this provision: "WATERPROOFING: Wall and floor of basement and coal pocket under Friend Street sidewalk, all pits and trenches, and the floor of driveway are to be waterproofed with cement waterproofing and the waterproofing is to be guaranteed for ten years and a bond furnished to the Owner for the proper and sufficient guaranteeing of this waterproofing cement. CONCRETE: . . . Boiler room, basement floor, floor of pits, etc., must be reinforced if necessary to resist the upward pressure. FINISH: . . . In the basement the cement waterproofing will form the finish."

The section of Boston where the building in question is located, originally was a part of the bay or harbor, which has been artificially filled, and the soil, particularly at high tide, is filled with water, especially in the spring and autumn, when the pressure of the water is very strong.   When the lease was executed and when possession was taken under it by the plaintiff, the basement of the building was dry.   The

concrete, at that time, was in the process of being finished, and there was nothing to indicate that the floors and walls were not waterproof and sufficiently strong to resist the pressure of the water. Sometime prior to this, when the basement floors were being laid, the plaintiff's superintendent noticed that a two inch slab of concrete was being laid and that no reinforcement was put in; and called this to the attention of the defendant, stating that he feared trouble from water because of this construction. The defendant replied " . . . there would be no water in the basement." It did not appear that any change was thereafter made in the thickness of the floors or in the method of laying them.

In the spring of 1914 water was in the basement. It began by oozing through the cement floors; then the upward pressure caused cracks in the floor, and substantial quantities of water came in through these cracks and at other points in the basement. It appeared that as a result of the condition of the soil due to the fact that for many years several large stables were in the vicinity, this water carried an offensive odor. Frequent complaints were made by the plaintiff, but the condition was not remedied until 1920, when the plaintiff relaid the floors in the basement and refinished the cement. By reason of the pressure of water in the basement, the greater part of it became useless for storage purposes and the plaintiff's property was damaged. In August, 1916, the parties agreed that the plaintiff might make the basement water tight without prejudice to its rights.

The master found that the floors were not constructed of materials that were water tight "or of sufficient strength to resist the pressure of the water." The plaintiff sought relief in damages on the ground that the defendant had not performed his original contract. A decree was entered for the plaintiff for the damages it sustained to the date of the suit. Upon the plaintiff amending its bill with a prayer for damages sustained after the filing of the original bill, a final decree was recorded directing the defendant to pay the plaintiff the sum of $9,450, with interest from the date of the decree, and costs. The plaintiff and defendant appealed.

We will first consider the defendant's appeal. He con-

tends that he has not broken the contract; that the floor was constructed in accordance with the plans and specifications; that this was all the defendant was required to do; and that he was not called upon to make the basement water tight.

The specifications stipulated that the basement floor and other parts of the premises "are to be waterproofed with cement waterproofing . . . the waterproofing is to be guaranteed for ten years" and a bond furnished "for the proper and sufficient guaranteeing of this waterproofing cement"; under the heading "CONCRETE: . . . Boiler room, basement floor, floor of pits, etc., must be reinforced if necessary to resist the upward pressure." The defendant contracted not merely to use a cement waterproofing, he agreed that the cellar floor would be waterproof. It was to be made water tight and the waterproofing was to be guaranteed for ten years. He agreed to bring about certain results, one of which was that the basement floor should be waterproof, and he further agreed to reinforce this floor, if necessary, to resist the upward pressure. The intention of the parties, as shown by the language of the contract, was, so to construct the building as to resist the upward pressure of the water and make the basement floor water tight.

In *Erickson* v. *George B. H. Macomber Co.* 211 Mass. 311, 314, upon which the defendant relies, the contractor was to provide materials and furnish the labor "as shown on the drawings and described in the specifications"; the floor in question was to be "covered 1″ thick with Warren's Kiola Asphalt Floor put down in the best manner under laid with two layers of best roofing paper acceptable to architects . . . and to be guaranteed and kept in repair for two years." The plaintiff offered to show that after the floor was completed it leaked. It was there held the defendant did not agree to make the floor water tight; that it agreed to build the floor according to the specifications and it performed its contract when this was done, even if this mode of construction did not produce a water tight floor. In the case at bar the specifications stipulated under the heading "WATER-PROOFING" that the "Wall and floor of basement . . . are

to be waterproofed"; it was to be done with cement water-proofing, but the result was to be accomplished and the floor was to be water tight.   The master has found that the floor was not made water tight, and was not "constructed of materials water tight in character or of sufficient strength to resist the pressure of the water."

The form of lease was set out in the contract, and although the lease was executed after the contract was made, the plaintiff is not thereby prohibited from recovering under the independent agreement contained in the written contract. *Graffam* v. *Pierce,* 143 Mass. 386.   *Durkin* v. *Cobleigh,* 156 Mass. 108.   See in this connection *Spear* v. *Hardon,* 215 Mass. 89, 91.

The plaintiff's appeal involves the question of interest. In the final decree, from which the plaintiff appealed, interest was allowed, on the amount of damages awarded, from March 12, 1925, the date of the decree.   The master in the course of his report found that the damages suffered by the plaintiff were sustained prior to July 1, 1920.   He did not allow interest, one of the reasons assigned for this finding was that it was "more than six years after this bill was filed and more than three years after the plaintiff had incurred the expense necessary to make the basement water tight before the case was brought to trial"; and that this delay was not caused by the defendant.   He makes no finding indicating that the plaintiff caused the delay.

Although the amendment covering the damages suffered by the plaintiff after the beginning of the suit was not allowed until February 17, 1925, nothing appears in this case to take it out of the general rule, that in assessing damages of this kind, a plaintiff is not to be awarded interest as interest, but he should be placed in the same position in reference to the injury as if the damages directly resulting from the injury had been paid immediately.   Interest is generally included in the damages at the date of the decree, by adding interest at the legal rate of six per cent from the time of the injury.   There may be circumstances where an allowance of less than interest at six per cent would compensate for the delay, but no such circumstances appear in this

case. *Frazer* v. *Bigelow Carpet Co.* 141 Mass. 126. *Ainsworth* v. *Lakin,* 180 Mass. 397, 402. *Atwood* v. *Boston Forwarding & Transfer Co.* 185 Mass. 557, 559. *C. W. Hunt Co.* v. *Boston Elevated Railway,* 217 Mass. 319, 323. *International Trust Co.* v. *Myers,* 241 Mass. 509, 516. The defendant relies on *McGrimley* v. *Hill,* 232 Mass. 462, where the plaintiff brought an action of contract to recover for services performed at the request of the defendant, without any agreement expressed or implied as to the price to be paid therefor. It was held that interest ran, not from the date of the demand but from the date of the writ. In the case we are considering, interest is not allowed as interest, but as a part of the plaintiff's damages. These damages were all sustained before July 1, 1920, and from that time interest as a part of the damages should be allowed. *Peabody* v. *New York, New Haven, & Hartford Railroad,* 187 Mass. 489, 492, 493.

It follows that the decree should be modified by striking out the statement following the figures $9,450, "with interest on the same from the date hereof," and substituting the words, with interest on the same from July 1, 1920. As so modified it is affirmed with costs.

*Ordered accordingly.*