Coyne Industrial Laundry of Schenectady, Inc.
*vs.* A. Roderick Gould.

Bristol. December 11, 1970. — April 13, 1971.

Present: Spalding, Cutter, Spiegel, Reardon, & Quirico, JJ.

*Contract*, Agreement not to compete. *Contempt. Laches. Equity Jurisdiction*, Laches. *Damages*, For breach of contract, For loss of business opportunity, Counsel fees. *Attorney at Law. Interest. Words*, "Agency," "Solicitation," "Furnishing."

With respect to a consent decree in a suit in equity by an industrial laundry corporation enjoining the defendant, a former general manager of the plaintiff, for a period of three years "from soliciting . . . Industrial laundry business including . . . dust control equipment and supplies . . . from any person, firm, corporation or agency being served by plaintiff" on a stated date within a certain area, and "further" enjoining the defendant "from furnishing such industrial laundry items . . . to any of the aforesaid" in such area and for such period, where it appeared that within such period the defendant submitted to the General Services Administration, with which the plaintiff had had contracts while he was the plaintiff's general manager and which was its customer on the stated date, a bid to furnish dust control equipment to post offices within the prohibited area, that the defendant discussed his bid and his plant capabilities with a representative of such Administration, that he was awarded the contract to furnish such equipment as the "lowest responsible bidder," and that he did furnish such equipment for about eight months, it was held that there was no merit in contentions by the defendant that the Administration as a public agency was not an "agency" within the meaning of the decree [273–274]; or that the defendant's actions did not amount to "solicitation" [274–275]; or that the decree prohibited only the combination of "solicitation" and "furnishing," and not either alone [275]; or that the terms of the decree were ambiguous [275–276]; and it was further held that the defendant was properly found to be in contempt [276].

In a contempt proceeding against a former employee of the plaintiff commenced about three months after the defendant bid on a contract with a third person and about two months after the defendant began performance of the contract in violation of a consent decree in a suit in equity enjoining the defendant from competing with the plaintiff, subsidiary findings by a master disclosed nothing inconsistent with his determination that the plaintiff was "not guilty of laches," and such determination must stand. [276]

In a contempt proceeding against a former employee of the plaintiff for violation of a consent decree in a suit in equity enjoining the defendant from engaging in a certain business in competition with the plaintiff, the proper measure of damages for violation of the decree by the defendant by entering into a particular contract with a third person was the net profit which the plaintiff would have made if it had performed that contract, not damages measured by a theory designated by the plaintiff's accountant as "cash flow." [276-277]

On the record of a contempt proceeding against the defendant in a suit in equity for violation of a decree enjoining him from competing with the plaintiff in certain business matters, an award of counsel fees to the plaintiff was reduced by this court more than half in view of a very substantial reduction by this court in the amount of damages awarded and of a usual practice of trial attorneys in the locality to charge at a per diem rate, which resulted in the reduced award of counsel fees, rather than at an hourly rate on which the original award of such fees was based. [277-278]

In a contempt proceeding for violation of a decree enjoining business competition, interest on damages awarded should be allowed from the date by which all the damages had been sustained, and interest on counsel fees awarded should be allowed from the date of the report of a master dealing with such fees. [278-279]

PETITION for contempt filed in the Superior Court on December 27, 1966.

The case was heard on the merits and for final decree by *Noonan, J.*, and on a master's reports as to damages and counsel fees by *Cahill, J.*, and *Dimond, J.*

*Paul J. McCawley* for the defendant.

*George C. Perkins* for the plaintiff.

SPALDING, J. This is a petition seeking to have the defendant adjudged in contempt for an alleged violation of a decree restraining him from competing with the plaintiff in certain situations. The case was heard by a judge who found the defendant in contempt and submitted the issue of damages to a master. A final decree was entered awarding damages, including attorney's fees, to the plaintiff. The defendant appeals from this decree and the plaintiff appeals from it in so far as it disallowed interest on the award of damages.

Portions of the evidence heard by the judge have been designated by the parties. See *Cohen* v. *Santoianni*, 330 Mass.

187, 190.  The relevant facts are as follows.[1]  The plaintiff is engaged in the industrial laundry business and has a plant in New Bedford serving the New England area.  The defendant was employed by the plaintiff as its general manager at New Bedford for about three years prior to November 7, 1964, when he resigned and started his own industrial laundry business in New Bedford.  The plaintiff soon thereafter filed a bill in equity to enjoin the defendant from competing with it in violation of a restrictive covenant in his employment agreement.  To dispose of this suit a final decree, consented to by the defendant, was entered enjoining the defendant from soliciting industrial laundry business, including dust control equipment and supplies to "any person, firm, corporation or agency being served by Plaintiff on March 22, 1965" in Massachusetts, Rhode Island and several Connecticut counties (hereinafter called the prohibited territory) for a period of three years ending November 7, 1967.[2]  The plaintiff is a large company with business operations in about twenty States. It does $1,800,000 of business yearly.  The defendant operates on a much smaller scale.  Since 1961 the plaintiff has been awarded, upon competitive bidding, annual contracts with General Services Administration (hereinafter called G.S.A.) to furnish dust control items to approxi-

---

[1] These facts are contained in the master's report or found by us from the evidence heard by the judge on the contempt petition.  See *Lowell Bar Assn.* v. *Loeb,* 315 Mass. 176, 178.

[2] The decree reads in pertinent part:  "Decreed that the Defendant A. Roderick Gould . . . be enjoined from calling upon or otherwise soliciting or causing to be called upon or otherwise soliciting or assisting the solicitation of (a) Industrial laundry business including . . . pick-up and delivery of industrial laundry items, including . . . dust control equipment and supplies . . .; and (b) Linen supply service business . . . from any person, firm, corporation or agency being served by Plaintiff on March 22, 1965 in the States of Massachusetts and Rhode Island and in the Counties of Windham, Norwich, Manchester, New London, Middlesex and Tolland in the State of Connecticut for a period of three (3) years from November 7, 1964 . . . and that . . . [he] be further enjoined in said area and for said periods from furnishing such industrial laundry items and such linen supply items to any of the aforesaid persons, firms, corporations or agencies being served by the Plaintiff on March 22, 1965 and from furnishing in writing or disclosing in any conversation directly or indirectly the names and addresses or any other information concerning the Plaintiff's customers to any other person, firm, corporation or agency."

mately 250 post offices in the New England States including the prohibited territory. Some of these contracts were signed by the defendant who was then the plaintiff's general manager.

On September 22, 1966, the defendant submitted bids for the G.S.A. dust control contract for which the plaintiff had bid at an earlier date. The defendant was found to have submitted the low bids in the major portion of the prohibited territory. The next lowest bidder, a representative of the plaintiff, was present at the opening of the bids and made a record of them. No representative of the defendant was present.

The plaintiff knew that the defendant could have withdrawn his bid without penalty, and was aware that to complete the contract he would have to invest a substantial amount of money in materials and equipment. No attempt was made to communicate with the defendant by the plaintiff concerning the injunction ordered in the consent decree. The plaintiff, however, informed G.S.A. of that injunction. G.S.A. nonetheless entered into a contract with the defendant. On November 2, 1966, the defendant began to service the installations under this contract. On December 27, 1966, the contempt proceedings were commenced. The plaintiff explains the delay in action by the fact that there was a change in general manager during this period and that the president of the company was out of the country until mid-November.

After a trial upon the merits, the judge found that G.S.A. was an agency being served by the plaintiff in the prohibited territory on March 22, 1965; that the defendant solicited the dust control business and furnished dust control items to G.S.A.; and that the "submission of the bid, the acceptance of the award and the furnishing of dust control equipment and supplies to G.S.A. thereafter by the defendant was in violation of the . . . [consent] decree."

On June 29, 1967, upon the plaintiff's motion, the court amended its original order adjudging the defendant in contempt by requiring the defendant to cease and desist

from furnishing dust control equipment and supplies to G.S.A. On July 5, 1967, the defendant surrendered his contract to the plaintiff.

The master found that the plaintiff's damages amounted to $13,555. He also made an alternate finding that if, as matter of law, his method of computing damages was in error then the plaintiff was entitled to recover its loss of "net profit" on the contract in the amount of $924.69, plus interest.

An interlocutory decree was entered confirming the master's report and ordering the defendant fined and his property attached in the amount of $13,555. At the same time, upon the plaintiff's motion for allowance of counsel fees and expenses as additional damages, the matter was again referred to the master.[3]

The master found that attorney's fees amounting to $7,989.83 were reasonable in the circumstances. His report was confirmed by interlocutory decree. A final decree was entered awarding damages in this amount in addition to the $13,555 mentioned above.

## DEFENDANT'S APPEAL.

1. The defendant argues that his submission of the bid, acceptance of the award, and furnishing of dust control equipment and supplies to G.S.A. did not constitute a violation of the consent decree. He bases this contention on the interpretation of certain key words in the decree. The first of these is "agency." While the defendant concedes that under the Federal statutory law G.S.A. is clearly an "agency of the Federal Government" (40 U. S. C. [1964] §§ 471–492), he argues that in the context of the decree, public agencies like G.S.A. were not meant to be included. To support this contention he argues that the main reason

---

[3] An endorsement on the plaintiff's motion signed by the judge read: "On agreement of counsel that Atty. fees & expenses of some amount is due, this matter is recommitted to the Master to verify such amount and to verify and report on all facts pertaining thereto."

courts enforce decrees of this kind is because they are reasonably necessary to protect the good will of the former employer's business. *New England Tree Expert Co. Inc.* v. *Russell,* 306 Mass. 504, 509. This is based on a recognition that the former employee would have had no contact with his employer's customers had it not been for his employment. *Boston & Suburban Laundry Co.* v. *O'Reilly,* 253 Mass. 94, 98. The plaintiff's general manager conceded that there is no "confidential information," "secret formulas," or "personal relationship" with G.S.A., and that award of the contract is strictly on the basis of the "lowest responsible bidder." The defendant s argument, in effect, is that it is "unreasonable" to include public agencies like G.S.A. in the decree because G.S.A. awards its contracts solely on the basis of the lowest bid made by a qualified bidder, and there is no "good will" involved in the process at all.

We disagree. In the circumstances, including G.S.A. in the prohibited term "agency" is not unreasonable. G.S.A. was one of the plaintiff's major accounts, comprising 20% of its dust control business in 1966–1967. The time restriction is limited to three years. The defendant himself had signed previous bids to G.S.A. as the plaintiff's general manager before leaving its employ. It is conceded that G.S.A. was one of the plaintiff's customers "being served" with dust control equipment on March 22, 1965, in the prohibited territory. The defendant's argument that such a finding conflicts with Federal procurement policies and is against public policy is not persuasive. See *Godard* v. *Babson-Dow Mfg. Co.* 319 Mass. 345, 348–349.

The defendant next argues that his actions did not amount to "solicitation" because there was no personal contact or personal importunity addressed to a particular individual. We are of opinion that personal contact is not essential to "solicitation." In the case at bar the acceptance of the lowest bid was the only method used by G.S.A. to determine whom it would engage to perform the contract. The defendant made use of this process, submitted a bid, and later discussed his bid and his plant capabilities

with a representative of G.S.A. This was sufficient "solicitation" to come within the terms of the decree.

The final argument pertaining to definition concerns the word "furnishing." The defendant argues that the decree prohibits only the combination of "solicitation" *and* "furnishing," and not either alone. We disagree. The decree in two separate parts deals with these as two distinct activities. The portion on "furnishing" begins with the words *"further* enjoined" (emphasis added). While damages may be established only by proof of actual "furnishing," "solicitation" is equally enjoined. Thus, even if we held that the defendant here did not "solicit" business from G.S.A., we would still find a violation of the decree from the fact that he did furnish dust control equipment to G.S.A. from November 2, 1966, to July 5, 1967, a fact which the defendant does not dispute.

2. The defendant next contends that the submission of the bid and the acceptance and performance of the award from G.S.A. did not constitute a contempt of court. To constitute contempt there must be "a clear and unequivocal command in the injunction and an equally clear and undoubted disobedience." *Nickerson* v. *Dowd,* 342 Mass. 462, 464. *United States Time Corp.* v. *G. E. M. of Boston, Inc.* 345 Mass. 279, 282. His contention is that to the extent that the decree includes G.S.A. in the term "agency" and includes bidding in the term "solicitation," it is ambiguous and thus disobeying it in this manner should not be viewed as a contempt of court. In support of this argument he notes that on the two previous occasions when he violated the decree, the plaintiff immediately informed him of the violation and he ceased the forbidden activity. Here he urges that since the plaintiff did not immediately notify him, the plaintiff must not have been sure he was in violation of the decree and thus it must be ambiguous to this extent. The short answer is that it is not the plaintiff's obligation to police compliance with the decree, but the defendant's obligation to make certain he does not violate it. Thus if the defendant saw the decree as ambigu-

ous on the point in question he could have sought clarification from the court before he engaged in the questionable conduct. We, however, do not believe the terms to be ambiguous. That G.S.A. is an agency that was a customer of the plaintiff on the date of the decree is not disputed. That the defendant furnished dust control equipment to G.S.A. in the forbidden territory during the time the decree was in effect is also not disputed. These are the essential facts that are necessary to make out a violation of the decree, and they are here unambiguously present. The defendant was properly found to be in contempt.

3. The defendant advances another argument which is related to that just mentioned. He contends that the plaintiff should have been barred by laches. Laches is a question of fact. *Steward* v. *Finkelstone*, 206 Mass. 28. The master found that the "plaintiff [was] not guilty of laches." We find nothing in the subsidiary findings of the master that is inconsistent with this determination and it must stand. *Dodge* v. *Anna Jaques Hosp.* 301 Mass. 431, 435.

4. The defendant contends that the measure of damages employed by the master is incorrect as a matter of law. The master used a theory designated by an accountant called by the plaintiff as "cash flow." He accepted the plaintiff's statement that 44.3% of the expenses involved in its dust control business as a whole for the year 1966–1967 was directly connected with producing that business; that 51.9% of the expenses for the same year was fixed or indirect charges; and that 3.8% would have been the net profit on the contract. The master then found that the plaintiff was entitled to the net profit of the contract plus compensation for the 51.9% of expenses attributable to fixed costs in serving the contract.

The plaintiff relies heavily on *F. A. Bartlett Tree Expert Co.* v. *Hartney*, 308 Mass. 407, 412, as a case where we upheld allowance of similar damages. We do not read that decision as sanctioning the so called "cash flow" theory involved here. But in any event it is distinguishable from

the present case. There the master "specifically found that the overhead costs of the plaintiff generally or in any of its divisions were not materially decreased by the loss of the orders improperly procured and executed by the defendants, and also that had the plaintiff executed those orders its overhead costs would not have been materially increased." The master in this case made no such finding.

The proper measure of damages in a case like the present is what the plaintiff would have made had the contract been performed. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 21. *White Spot Constr. Corp.* v. *Jet Spray Cooler, Inc.* 344 Mass. 632, 635. *Air Technology Corp.* v. *General Elec. Co.* 347 Mass. 613, 628. We hold that the master's alternative finding of net profits (being the measure of "lost opportunity") is therefore the proper measure of damages in this case.

5. The defendant's final argument is that the award of counsel fees was excessive. In his brief the defendant takes the position that counsel fees in a civil contempt case are highly unusual. At the arguments, however, the defendant conceded that counsel fees were allowable and contested only the amount of the award.[4] In *Root* v. *MacDonald*, 260 Mass. 344, 362, a case involving the violation of a labor injunction, this court held that a fine could be imposed on the defendant and ordered paid to the plaintiff "which, if not compensatory for the wrong done, may be designed to reimburse the plaintiff not only for the taxable costs of suit but also for expenses of counsel fees and other disbursements in enforcing his rights." This view is supported by the great weight of authority. See Annotation, 55 A. L. R. 2d 979, 981.

The master's report reads, "Without detracting from his competence and ability, I find that due to lack of trial experience . . . [the plaintiff's attorney] did not handle the case as expeditiously as an experienced trial lawyer

---

[4] See footnote No. 3 where the defendant agreed in the court below that attorney's fees and expenses in "some amount . . . [were] due."

would have handled it." The master further found that he did not follow the usual practice of a trial attorney in New Bedford of charging per diem rates for trial work, but rather based his charges on an hourly rate that turned out to be much higher. We are of opinion that these findings, when considered with the amount of his award, are somewhat inconsistent. While the master did reduce both the total time and the hourly rate billed by the attorney, these reductions alone are not sufficient in the circumstances.

It has been said that where attorney's fees are ordered to be paid by the losing party to the prevailing party "the standard is not the same as that applied in an action by an attorney against a client with whom he has voluntary contractual relations. . . . Fees in such cases are awarded on 'strictly conservative principles.' " *Hayden* v. *Hayden*, 326 Mass. 587, 596. While there was evidence that the amount sought by the plaintiff was fair and reasonable, there was also evidence that the usual practice of a trial attorney would have been, using the per diem basis, to charge only $3,150. We have before us sufficient evidence to enable us to determine the proper amount of the fee and from the evidence we find and hold that no more than $3,150 is recoverable. See *Dillon's Case*, 324 Mass. 102, 113. It should be noted, moreover, that the master based his award in part on the amount recovered ($13,555), but as a result of this opinion that amount is itself reduced to $924.69, a very much smaller sum.

## PLAINTIFF'S APPEAL.

The plaintiff argues that interest should have been allowed on the award. We perceive nothing in this case "to take it out of the general rule, that in assessing damages of this kind, a plaintiff is not to be awarded interest as interest, but he should be placed in the same position in reference to the injury as if the damages directly resulting from the injury had been paid immediately." *H. D. Foss & Co. Inc.* v. *Whidden*, 254 Mass. 146, 151. Accordingly, we

think that interest as damages should be allowed on the $924.69 award from July 5, 1967, the date by which all the damages were sustained. The matter of counsel fees stands on a different footing. Interest should be allowed on the $3,150 counsel fee award from the date of the master's report on that subject. *Buckley & Scott Util. Inc.* v. *Petroleum Heat & Power Co.* 313 Mass. 498, 509–510. G. L. c. 235, § 8.

## CONCLUSION.

As modified, the interlocutory decrees are affirmed. The final decree is to be modified so as to award damages to the plaintiff in the sum of $924.69 with interest from July 5, 1967, and counsel fees in the sum of $3,150 with interest from the date of the master's report on that subject. As so modified it is affirmed.

*So ordered.*