Wernick, J.
Findings of Fact
1. Defendant, Tia Hetu (“Hetu”), was an employee of plaintiff, Gymnastics Learning Center, Inc. until on or about January 23, 1997, when she resigned.
2. On or about March 4, 1997, Hetu became the sole proprietor and sole employee of The Gymnastics Place, in Whitinsville, Massachusetts.
3. Hetu entered into a lease of space in Whitinsville for The Gymnastics Place, using money borrowed from her father. She purchased equipment for The Gymnastics Place, again using money borrowed from her father.
4. In furtherance of the business of The Gymnastics Place, Hetu began registering students, preparing a flyer for the business, obtaining insurance for the business and making improvements to the leased premises.
5. On February 26, 1997, Gymnastics Learning Center, Inc. commenced a civil suit against Hetu, seeking specifically to enforce a noncompetition clause in an employment contract allegedly executed by Hetu in 1996.
6. On March 6, 1997, Justice Sikora of this court issued a Preliminary Injunctive Order, which stated, in pertinent part: “For a period of one year from the date of her termination on January 23, 1997, or until the close of January 23, 1998, the defendant Tia Hetu shall not engage in any gymnastic training business in competition with the business of the plaintiff Gymnastics Learning Center, Inc., within a radius of twenty miles of the plaintiffs location at 574 Lake Street, Shrewsbury, Massachusetts . . .”
7. The Gymnastics Place is located within twenty miles of574 Lake Street, Shrewsbury, Massachusetts. The Gymnastics Place offers instructional gymnastics to children three to five years old as does the Gymnastics Learning Center, Inc., which also offers classes to older children and teenagers.
8. The Gymnastics Place competes with Gymnastics Learning Center, Inc.
9. Hetu received notification of the preliminary injunction sometime in March 1997.
10. Despite receipt of the notification, Hetu has continued her involvement with The Gymnastics Place, in at least the following ways:
A. Until on or about June 19, 1997, Hetu continued to be listed on a business certificate filed in Whitinsville as the proprietor of The Gymnastics Place.
B. Until June 19, 1997, she and her husband continued to be listed as the owners and signatories of The Gymnastics Place’s bank account.
C. Until June 19, 1997, The Gymnastics Place’s answering machine continued to direct people to call Hetu at her home.
D. Hetu continues to be listed as the owner on the insurance policy for The Gymnastics Place.
E. Hetu has continued to participate in the business of The Gymnastics Place by registering students, helping to write a flyer for The Gymnastics Place, performing secretarial functions and accounting functions, and providing the day to day management.
11. On June 19, 1997, Carol Bond, an employee of a private investigating firm which was hired by the plaintiff, visited The Gymnastics Place and spoke with Hetu. Prompted by this visit, on or after June 19,1997, Hetu made the following changes:
A. The business certificate was amended to list Hetu’s father, Rodney S. Spearin, of Gardner, Maine as the sole proprietor of the business.
B. Hetu’s father became the owner and sole signatory of The Gymnastics Place’s bank account.
C. A new application was filed with The Gymnastics Place’s insurance company to show Hetu’s father as the owner of the business.
D. The Gymnastics Place’s answering machine was changed to provide a different number.
In addition, since the entry of the injunction, Hetu’s father has paid the rent for The Gymnastics Place and most, if not all of its expenses.
*170 12. Hetu’s father has not forgiven the loan he made to Hetu, nor will Hetu allow him to do so. Hetu’s father has paid her nothing for the purported transfer of her ownership of the business.
13. The Gymnastics Place is scheduled to begin classes on July 8, 1997. These classes will be conducted by Hetu’s sister, who is an experienced gymnast, trainer, instructor and coach. Hetu will not be conducting any classes. Hetu’s father and sister became aware of Judge Sikora’s order at least as early as April 1, 1997.
14. As a result of the injunction, Hetu and her father became concerned that Hetu would be unable to realize any income from The Gymnastics Place and would be unable to pay the ongoing expenses of the lease, insurance, etc. In order to protect Hetu’s investment in The Gymnastics Place (and her father’s loan to Hetu), Hetu, her father and her sister devised a plan, pursuant to which Hetu’s father would be listed as the owner of record of the business and all gymnastic instruction would be conducted by Hetu’s sister. Hetu’s involvement would be limited to advising her father and her sister and to performing secretarial and administrative functions. It was their intention to continue the operation and development of goodwill of the business so that Hetu could resume ownership and operation of The Gymnastics Place as soon as this litigation was resolved, or the injunction expired.
15. At no time did Hetu seek clarification of the injunction, before executing this plan with her father and sister; nor did she seek permission from the court or from the plaintiff to engage in this course of conduct.
16. Although the continued operation of The Gymnastics Place was in part motivated by a desire to protect Mr. Spearin’s loan to his daughter, the primary reasons for the continued operation of The Gymnastics Place were to permit The Gymnastics Place to develop goodwill and a clientele so that Hetu could resume ownership and control of a going and hopefully thriving enterprise in the future and to provide income to defray expenses to which Hetu was committed.
RULINGS OF LAW
Plaintiff has the burden of proving by a preponderance of the evidence that there has been clear and undoubted disobedience by the defendant of a command of the court which was clear and unequivocal on its face. Manchester v. Department of Environmental Quality Engineering, 301 Mass. 298, 212 (1980). Hetu contends that Judge Sikora’s order was not clear and unequivocal, because she has some doubt as to the precise meaning of the phrase “shall not engage in any gymnastic training business.” The Court, however, concludes that there is no ambiguity in that phrase as applied to Hetu’s conduct. If the defendant, however, had any doubt as to the meaning of that phrase, it was incumbent on her to seek clarification from the court, or permission from the plaintiff, before engaging in potentially contumacious conduct. O’Coyne Industrial Laundry of Schenectady v. Gould, 359 Mass. 269 (1971). In the circumstances of this case, Hetu may not shield herself from contempt by claiming that the order was ambiguous.
The Court concludes that Hetu has engaged in the gymnastic training business in competition with the business of the plaintiff, within a twenty mile radius of 574 Lake Street, Shrewsbury, Massachusetts, since judge Sikora’s order of March 6, 1997, in violation of that order. The Court further concludes that merely ordering Hetu to sever all ties with The Gymnastics Place, a remedy suggested by Hetu’s counsel, would be inadequate. Hetu’s involvement in the business to date has been extensive. She is responsible for selection of the location, purchasing of the equipment, determination of the programs offered by the business, recruiting students, obtaining insurance and innumerable other business functions. It is quite clear that her father and sister are actively involved in this enterprise only on a temporary basis to assist Hetu to avoid the injunction. Permitting this business, established by Hetu and operated for her benefit, to compete with the plaintiff within the radius of twenty miles in this manner would render meaningless the injunction of March 6, 1997.
The Court therefore concludes that Hetu has violated the Preliminary Injunctive Order of March 6, 1997, and that the appropriate remedy is to require (a) that The Gymnastics Place cease immediately all operations as a gymnastic training business for children under the age of eighteen and that (b) Hetu discontinue immediately any involvement in any gymnastic training business in competition with the business of the plaintiff, within a radius of twenty miles from plaintiffs location, as an owner, investor, officer, director, secretary, administrator, advisor, consultant, or in any other capacity. To help insure compliance with this order, Hetu will be fined $250 per day for each day that she, or The Gymnastics Place, is in violation of this order after Hetu receives notification of it.
The Court believes this is sufficient sanction for Hetu’s violation of the preliminary injunction and declines to award damages or legal fees and expenses to the plaintiff. Plaintiff has not proven any damages. The forced closing of Hetu’s business and the further order against Hetu and The Gymnastics Place will result in the loss of any possible benefit to Hetu from her contumacious conduct and will fully protect the interests of plaintiff.
ORDER
For the above reasons, the Court orders that The Gymnastics Place cease operations as a gymnastic training business for children under the age of eighteen immediately and that Hetu cease any involvement in any gymnastic training business in competition with the business of the plaintiff, within a radius of *171 twenty miles of 574 Lake Street, Shrewsbuiy, Massachusetts, as an owner, investor, officer, director, secretary, administrator, advisor, consultant or in any other capacity, until further order of this court. The Court further orders that Hetu be fined $250 for each day that she or The Gymnastics Place is in violation of this order after Hetu receives notice of this order.
The Court further orders that this case advanced for trial on the merits to August 11, 1997.