**INTERSTATE BRANDS CORP., Plaintiff,**

v.

**LILY TRANSPORTATION CORP. and Lily Transport Lines, Inc., Defendants.**

No. 99–12042–NG.

United States District Court, D. Massachusetts.

Jan. 31, 2003.

Paul W. Shaw, Wayne F. Dennison, Gregory T. Arnold, Sarah K Heaslip, Brown Rudnick Berlack Israels LLP, Boston, MA, for Interstate Brands Corporation, Plaintiff.

Erik Lund, Posternak, Blankstein & Lund, Boston, MA, for Lily Transportation Corporation, Lily Transportation Corporation, Defendants.

## MEMORANDUM AND ORDER RE: LILY'S c. 93A COUNTERCLAIM AND PREJUDGMENT INTEREST

GERTNER, District Judge.

Following a jury verdict of Nine Hundred Ninety–Nine Thousand And 00/100 ($999,000.00) Dollars for Lily on its counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing, the parties submitted proposed findings on Lily's M.G.L. c. 93A counterclaim and memoranda concerning the assessment of prejudgment interest. As described in the accompanying **JUDGMENT**, and for reasons set forth below, I find that Lily has not fulfilled its burden of proof on the c. 93A counterclaim, which is therefore **DISMISSED**. I further find that Lily is not entitled to prejudgment interest on any part of the verdict, and **ORDER** that **JUDGMENT** therefore shall **ENTER** for Lily in the amount of **NINE HUNDRED NINETY– NINE THOUSAND AND 00/100 ($999,- 000.00) DOLLARS.**

## I. BACKGROUND

Plaintiff Interstate Brands Corporation ("IBC") acquired a baked goods company called Nissen and assumed the rights and obligations of a shipping contract that Nissen had entered in 1994 with the defendants, Lily Transport Lines, Inc. and Lily Transportation Corporation (collectively, "Lily"). On October 4, 1999, before the initial contract term had expired, IBC brought this action seeking a declaratory judgment that it was not required to renew the contract. Lily filed its original answer and counterclaim on October 20, 1999, seeking a declaration that the contract could not be terminated without cause, that it must be renewed subject to certain conditions, and that damages for improper termination would include consequential damages such as lost profits. On April 14, 2000, Lily filed its first amended counterclaim, which further alleged that IBC had breached the contract by taking certain routes out of service in March of 2000 and had breached the implied covenant of good faith and fair dealing. On June 13, 2001, Lily filed another amended counterclaim, which alleged that IBC had breached the contract by refusing to renew it in December of 2000 and by failing to reimburse Lily for certain expenses related to Lily's collective bargaining agreements. Lily also claimed that IBC's conduct amounted to a violation of M.G.L. c. 93A.

After extensive and hotly contested discovery and motion practice, the case went to trial before a jury on December 2, 2002. As the evidence drew to a close, the parties requested jury instructions on just two items of damages: lost profits arising from IBC's failure to renew the contract for one or more terms, and attorneys' fees arising from an indemnity clause in the contract.[1]

---

1. Indeed, at the charge conference Lily expressly waived instruction on damages stemming from other claims, including, e.g., certain equipment reimbursements.

On December 17, 2002 the jury returned with a verdict for Lily on its counterclaims for breach of contract and breach of the covenant of good faith and fair dealing. The jury awarded Six Hundred Sixty–One Thousand, Five Hundred And 00/100 ($661,500) Dollars in damages for breach and Three Hundred Thirty–Seven, Five Hundred And 00/100 ($337,500.00) Dollars in attorneys' fees. The Court took Lily's M.G.L. c. 93A counterclaim under advisement.

## II. *LILY'S M.G.L. c. 93A COUNTER-CLAIM*

In order to prevail on its chapter 93A counterclaim, Lily was required to show that IBC's actions "(1) fall within 'the penumbra of some common-law, statutory, or other established concept of unfairness'; (2)[are] 'immoral, unethical, oppressive, or unscrupulous'; and (3) 'caused substantial injury.'" *Serpa Corp. v. McWane, Inc.,* 199 F.3d 6, 15 (1st Cir.1999). It is well established that the "simple fact that a party knowingly breached a contract does not raise the breach to the level of a Chapter 93A violation." *Ahern v. Scholz,* 85 F.3d 774, 798 (1st Cir.1996). Likewise, "violations of ch. 93A must meet a higher standard of liability than do breaches of an implied covenant of good faith and fair dealing." *PH Group Ltd. v. Birch,* 985 F.2d 649, 652 (1st Cir.1993). One picturesque way of describing c. 93A liability is that the "objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Ahern,* 85 F.3d at 798 (internal citations and quotation marks omitted). Under the circumstances of this case, based on careful review of all the evidence, I find that Lily has failed to carry its burden of proof.

As I explained in denying summary judgment and repeated many times during the motion practice in this case, the disputed contractual provisions at issue *are* ambiguous. Upon its purchase of Nissen, IBC acquired the rights and responsibilities of the contract that Nissen had negotiated with Lily. IBC took the plausible, albeit ultimately unavailing, position that the plain language of the contract did not require renewal and that IBC could take its shipping back in-house upon expiration of the initial contract term. But rather than taking action without judicial guidance, IBC brought a declaratory judgment action seeking to vindicate its view of the contract language. Even thought it finally took unilateral action while this case was pending, neither that fact nor IBC's hard-nosed negotiating posture nor various actions that followed naturally from its decision not to extend the agreement came close to the level of "rascality" that would be necessary to sustain a c. 93A claim.

## III. *PREJUDGMENT INTEREST*

The jury's award to Lily consisted of two elements: $661,500 in lost profits stemming from IBC's refusal to renew the contract for an additional term or terms, and $337,500 in attorneys' fees pursuant to a provision of the contract calling for reimbursement of enforcement costs. The parties dispute whether prejudgment interest should be assessed on both parts of the award and the proper starting date for accrual of interest. Upon careful scrutiny of the arguments and the law, in my judgment neither party's position is correct. Lily is not entitled to any prejudgment interest on this award.

### A. *Massachusetts Law of Prejudgment Interest*

The parties correctly agree that the calculation and award of prejudgment interest is a matter of substantive law, and that therefore state law must be applied in

diversity proceedings. *See Commercial Union Ins. Co. v. Walbrook Ins. Co.,* 41 F.3d 764, 774 (1st Cir.1994). The parties also agree that Massachusetts law governs this case, as expressly provided in the contract at issue.

The relevant Massachusetts statute provides:

> In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve percent per annum from the date of the breach or demand. If the date of the breach of demand is not established, interest shall be added by the clerk of the court, at such contractual rate, or at the rate of twelve percent per annum from the date of the commencement of the action.

M.G.L. c. 231, § 6C.

■ At first glance, application of the rule would appear straightforward and even mechanical. However, the Supreme Judicial Court ("SJC") has noted that although the statute "commands a ministerial act, its sole or primary purpose was *not* to provide administrative ease by establishing 'a fixed rule for mathematically calculable interest to avoid the costs and delays incident to disputes ....' " *Sterilite Corp. v. Continental Cas. Co.,* 397 Mass. 837, 839–40, 494 N.E.2d 1008 (1986) (emphasis added)(internal citation omitted). "[W]e should not accept the literal meaning of the words of a statute without re-

gard for that statute's purpose and history." *Id.* at 839, 494 N.E.2d 1008.

More concretely, the SJC explained, the prejudgment interest statute

> is designed to compensate a damaged party for the loss of use or unlawful detention of money. An award of interest is made so that a person wrongfully deprived of the use of money should be made whole for his loss. The common law was particularly sensitive to the possibility that a liberal award of prejudgment interest could result in a windfall for plaintiffs amounting, in essence, to an award of punitive damages. There is nothing in G.L. c. 231, § 6C, indicating that the Legislature intended to abandon this long-standing concern.

*Id.* at 841, 494 N.E.2d 1008 (awarding prejudgment interest based on dates plaintiff actually paid expenses that insurance company failed to reimburse, rather than earlier date on which complaint was filed or even earlier date insurance company declined coverage)(internal citation and quotation marks omitted).

### B. *Lily's Lost Profits Damages*

■ With regard to Lily's damages for breach ($661,500), the parties overlook the fact that the jury was specifically instructed (at the parties' request) to award the *present value* of Lily's lost profits, *i.e.,* a figure that would make Lily whole as of the date of the verdict. Thus, I must conclude that the jury's award was already adjusted to reflect the "time value" of money, otherwise known as interest.[2] Awarding prejudgment interest on this element of the verdict would give Lily a

---

**2.** Of course, calculating "present value" would require the jury to add interest for lost profits that would have come in prior to the verdict and discount lost profits that would have come in after the verdict. In the language of the instructions, "the amount [of damages] should be that which, with princi-

pal and interest, would produce the amount of the loss *today* " (emphasis added). While the evidence and testimony at trial did not make clear temporal allocation of lost profits, I must presume that the jury followed the instructions using its common sense and the evidence presented by the parties.

double recovery windfall, which would be an inappropriate result under the statute. *Cf. Computer Systems Engineering, Inc. v. Qantel,* 571 F.Supp. 1379, 1382–83 (D.Mass.1983)(declining to award prejudgment interest because lost profits calculations already included interest).

## C. *Attorneys' Fees*

With regard to the attorneys' fees element of the jury's award, the parties talk past each other. IBC cites cases that say interest is not due on attorneys' fees awarded pursuant to statute. *See, e.g., Osborne v. Biotti,* 404 Mass. 112, 116, 533 N.E.2d 1341 (1989)("attorney's fees awarded in a G.L. c. 93A action do not bear interest"). Lily counters that interest does accrue on attorneys' fees that are, themselves, part and parcel of "damages" for breach of contract. *See, e.g., Sterilite,* 397 Mass. at 838, 494 N.E.2d 1008 (concerning situation where insurance company breached contract by failing to reimburse insured's legal defense costs). Neither type of case is completely pertinent here. The jury awarded attorneys' fees to Lily pursuant to contract, not a statute as in *Osborne.* At the same time, this is not a case where the underlying breach of contract consisted of a failure to reimburse attorneys' fees, as in *Sterilite.*

■ The recovery of fees in this case follows from an indemnity provision of the contract. IBC never *breached* this provision and Lily's right to recover fees did not even vest until the jury returned its verdict and Lily prevailed on the underlying breach claim. It would be inappropriate to award prejudgment interest, which is a compensation mechanism for funds "unlawfully retained," when Lily had no right to those funds prior to the verdict.[3]

## D. *Date of Accrual*

In light of my findings above—that prejudgment interest is inappropriate on both elements of the verdict—the issue of when prejudgment interest begins to accrue is moot. Even if I had to reach the question, however, Lily still would not be entitled to prejudgment interest.

■ Lily argues that interest should accrue from the date of its original counterclaim—October 20, 1999—while IBC argues that interest should accrue from the date of its failure to renew the contract—December 22, 2000. Neither party is correct because both overlook the fact that Lily did not advance a claim of breach for failure to renew the contract—the only theory of damages submitted to the jury—until June 13, 2001. It would be inappropriate to tie the accrual of interest to commencement of Lily's original declaratory judgment counterclaim rather than the

---

**3.** My decision here is fully consistent with *Patry v. Liberty Mobilehome Sales, Inc.,* 394 Mass. 270, 475 N.E.2d 392 (1985), which stated in dicta that "interest should be awarded on attorneys' fees" if they "are part of a plaintiff's damages, as they may be, for example, in a civil contempt action." *Id.* at 272–73, 475 N.E.2d 392. In the underlying case cited by the *Patry* court, *Coyne Industrial Laundry v. Gould,* 359 Mass. 269, 268 N.E.2d 848 (1971), the court awarded interest on attorneys' fees in a contempt action from the date of a special master's calculation of damages, *not* from the earlier date when the ac-

tion was filed *nor* from the even earlier date when the defendant violated an underlying judgment. *See id.* at 279, 268 N.E.2d 848.

In any event, attorneys' fees in this case are not really an element of "damages" flowing from breach but rather an additional contractual right of recovery incident to that breach which vests when a party successfully takes action to enforce its rights. In that sense, this case is more analogous to the cases concerning statutory attorneys' fees provisions, which award fees incident to prevailing on an underlying claim.

date of its amended counterclaim for the specific breach that gave rise to the damages awarded, because Lily would then reap interest from October of 1999 on a loss which it had not even started to incur until after January of 2001.[4]

Moreover, because "lost profits" damages reflect loss of a stream of money that would have come in over time in the months and years after January of 2001, even awarding interest from June 13, 2001, could give Lily a windfall by awarding interest on *future* lost profits (*i.e.,* profits that would have come in after the June 13, 2001, date of claim, on which the statute pivots). Given such ambiguity, an award of prejudgment interest would be inappropriate. *See Cahill v. TIG Premier Insurance Co.,* 47 F.Supp.2d 87, 90–91 (D.Mass. 1999) (declining to award prejudgment interest in case where lost profits award likely reflected damages both before and after the date of suit because interest "is not added to damages which, by definition, are for losses to be incurred in the future"); *see also St. Paul Surplus Lines Ins. Co. v. Feingold & Feingold Ins. Agency, Inc.,* 427 Mass. 372, 377, 693 N.E.2d 669 (1998) ("in calculating prejudgment in-

terest under G.L. c. 231 . . . [§ ] 6C (applicable to contract actions), the fact that no loss was incurred until after an action was commenced should be recognized, as a matter of fairness, in order to avoid giving a party an undeserved windfall").

 With regard to attorneys' fees, the law is clear that, if this were a case where fees are subject to interest (which it is not),[5] interest should only be awarded from the date legal bills actually were paid. *See, e.g., Santos v. Chrysler Corp.,* 430 Mass. 198, 218, 715 N.E.2d 47 (1999) ("interest should be calculated on the basis of the dates on which the legal bills were paid") (citing *Sterilite,* 397 Mass. at 842, 494 N.E.2d 1008); *St. Paul Surplus Lines Ins. Co.,* 427 Mass. at 377, 693 N.E.2d 669 (holding that interest should be calculated from dates of settlement and defense payments).[6] Lily failed to enter any evidence of the dates it actually paid attorneys' fees in this case. If I had to reach the question, I would reject Lily's invitation to invert ordinary burdens of proof by finding that IBC should bear the financial consequences of this lack of proof and assessing interest from the filing of Lily's counterclaim. *See Cahill,* 47 F.Supp.2d at 90–91

---

**4.** While it is theoretically possible that the jury could have found a breach of contract or breach of the implied covenant of good faith and fair dealing based on IBC's actions prior to IBC's refusal to renew the contract, Lily expressly waived any damages arising from such breaches.

**5.** As explained above, attorneys' fees may be subject to interest as damages in situations where the underlying breach is a failure to reimburse fees, but that is not the case here.

**6.** At first glance there might appear to be some tension between these cases—where the trial courts were required to identify individual payment dates and calculate interest from those dates—and two other cases that Lily cites: *Deerskin Trading Post, Inc. v. Spencer Press,* 398 Mass. 118, 495 N.E.2d 303 (1986) and *Saint–Gobain Industrial Ceramics, Inc. v.*

*Wellons, Inc.,* 246 F.3d 64 (1st Cir.2001). In both *Deerskin* and *Saint–Gobain,* the court declined a claimant's request to award interest from an earlier alleged date of breach rather than the date of suit because "[e]stablishing the date of breach or demand is a determination for the trier of fact, and, where trial has proceeded before a jury, neither the judge nor an appellate court can make such a determination." *Deerskin,* 398 Mass. at 125, 495 N.E.2d 303. In fact, however, these case are consistent: the outcome in all of them reflects the guiding principle that a plaintiff should not receive an interest "windfall." Judicial factfinding in *Deerskin* and *Saint–Gobain* was rejected because it would have afforded additional interest recovery to the claimants in the face of the claimants' own failure to prove necessary facts to the jury.

(rejecting similar inversion of burden of proof and declining to award prejudgment interest).

## IV. *CONCLUSION*

For the foregoing reasons, I **ORDER** that Lily's c. M.G.L. c. 93A claim be **DISMISSED** and that **JUDGMENT** for Lily enter in the amount of **NINE HUNDRED NINETY–NINE THOUSAND AND 00/100 ($999,000.00) DOLLARS.**

**SO ORDERED.**