# United States Court of Appeals

## For the First Circuit

No. 08-1753

REMEXCEL MANAGERIAL CONSULTANTS, INC.,

MARÍA S. KORTRIGHT,

Plaintiffs, Appellees,

v.

EDGARDO ARLEQUÍN,

MUNICIPALITY OF GUAYANILLA,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador Casellas, U.S. District Judge]

Before

Torruella, Tashima,[*] and Lipez, Circuit Judges.

Jorge Martínez-Luciano, with whom Johanna M. Emmanuelli Huertas and Emil Rodríguez-Escudero were on brief, for appellants. Pedro R. Vázquez III, for appellees.

October 1, 2009

_____

[*] Of the Ninth Circuit, sitting by designation.

**LIPEZ**, <u>Circuit Judge</u>.  We consider for the second time this political discrimination case, in which plaintiffs claim they were denied payment for services performed on behalf of the municipality of Guayanilla, Puerto Rico, in violation of the First Amendment.  In the original appeal, we vacated the district court's dismissal of the case for failure to state a claim, holding that the plaintiffs' complaint adequately pleaded the necessary elements of a political discrimination action under 42 U.S.C. § 1983. <u>Ramírez</u> v. <u>Arlequín</u>, 447 F.3d 19, 25 (1st Cir. 2006).  Subsequent to our decision, the district court reinstated the claims and eventually entered a default judgment against defendants, the municipality of Guayanilla, Puerto Rico ("the Municipality"), and its mayor, Edgardo Arlequín, as a result of repeated discovery violations.

In this appeal, defendants argue that: 1) the district court abused its discretion in entering the default judgment, and 2) even in light of the default judgment, the plaintiffs cannot prevail because their complaint does not make out a prima facie case of political discrimination.  For reasons we shall explain, we conclude that there was no abuse of discretion in the entry of a default judgment, and that the law of the case doctrine bars defendants' attempt to reargue the adequacy of plaintiffs' complaint.  We therefore affirm.

## A. Background

Although the background facts of this complaint are described in our earlier decision in this case, id. at 20-22, we will recount them here succinctly. Plaintiff Remexcel Managerial Consultants ("Remexcel") is a company owned by Reinaldo Ramírez. Remexcel entered into a contract with the former mayor of Guayanilla, Ceferino Pacheco Guidicelli ("Mayor Pacheco"), a member of the New Progressive Party ("NPP"), to perform accounting services for the Municipality that would identify residents who owed taxes. Id. at 20-21. Remexcel was to receive ten percent of the money obtained as a result of its services. When Remexcel identified a tax deficiency of $4,444,058.87 owed to the Municipality by Stinnes Interoil, an oil supply company, the Municipality informed Stinnes of that determination, and Stinnes filed a lawsuit against the Municipality in Puerto Rico Superior Court seeking to dispute any outstanding tax liability. See Veba Oil Supply v. Municipality of Guyanilla, Civ. No. JCO 96-003 (Super. Ct. Ponce).

Plaintiff María S. Kortright is a lawyer who was hired by Mayor Pacheco and the Municipality to defend that lawsuit under a contingency arrangement which, like the agreement with Remexcel, would pay her ten percent of the money collected as a result of her work. Ramírez, 447 F.3d at 21. Working on the case until 2000,

Kortright filed the summary judgment motions which led to a favorable resolution of the case for the Municipality. Id. After she performed this work, however, defendant Edgardo Arlequín ("Mayor Arlequín") took office, replacing Mayor Pacheco. Mayor Arlequín is a member of the Popular Democratic Party ("PDP"). Id.

The complaint alleges that after taking office, Mayor Arlequín began "a pattern and practice of discrimination by taking adverse action against anyone associated with the prior New Progressive Party administration at any level," and, as a result, refused to continue the Municipality's professional association with the plaintiffs. Kortright was replaced as counsel for the Veba Oil case. According to the complaint, "[t]he new counsel did nothing of record but enter his appearance before the court granted summary judgment for the Municipality in the amount of $4.5 million, based on Kortright's work." Id. The new lawyer then settled the suit for $1.8 million to be paid to the Municipality. Id.

The plaintiffs brought suit under 42 U.S.C. § 1983, alleging, inter alia, that their First Amendment associational rights were violated because Mayor Arlequín and the Municipality refused to pay them money they were rightfully owed solely because of their association with Mayor Pacheco. Defendants moved in the district court to dismiss the suit for failure to state a claim. The district court granted the motion, concluding that, pursuant to the Supreme Court's decisions in Elrod v. Burns, 427 U.S. 347

-4-

(1976), and <u>Branti</u> v. <u>Finkel</u>, 445 U.S. 507 (1980), plaintiffs' jobs were not entitled to protection from political discrimination because they involved policymaking positions. <u>Ramírez</u>, 447 F.3d at 21-22.[1]

In the appeal brought by plaintiffs, we were "called upon to decide whether a deliberate executive decision by a state actor, based only on a partisan political change of administration, to deprive independent contractors of a payment to which they are legally entitled, violates the contractors' First Amendment rights." <u>Id.</u> at 20. Ruling favorably for the plaintiffs, we concluded that the <u>Elrod/Branti</u> doctrine's exemption of policymakers from protection against political affiliation discrimination does not apply "to someone who is neither a government employee nor seeks a continuing relationship with the government, but who merely asks to be paid in accordance with a contract which that person has already performed." <u>Id.</u> at 23. We wrote that, "[a]lthough we must always be concerned about constitutionalizing traditional common law claims, we see no theoretical bar to the First Amendment claim that is alleged here." <u>Id.</u> We went on to say that "Remexcel and Kortright must plead that they engaged in protected association, that they were entitled to payment under their contracts, and that the Municipality denied the

<hr>

[1] The district court also determined that, unlike his company Remexcel, plaintiff Ramírez lacked standing to bring suit. We accepted the dismissal of Ramírez's claims because he did not contest that ruling. <u>Id.</u> at 22.

payment in retaliation for their exercise of associational rights. These elements are adequately pleaded in the complaint." Id. at 25 (citation omitted). Hence we reversed the district court's dismissal of Remexcel's and Kortright's First Amendment retaliation claims.

## B.  The Renewed Proceedings in the District Court

### 1. Defendants' motion for judgment on the pleadings

In light of our decision, the district court re-opened the case on June 22, 2006. Approximately two months later, on August 30, 2006, the Municipality filed a motion for judgment on the pleadings, arguing that "plaintiffs failed to state a theory of political discrimination that, even with evidentiary support, would constitute a violation of said parties' First Amendment rights." See Fed. R. Civ. P. 12(c). Plaintiffs opposed the motion and asked the court to impose sanctions pursuant to 28 U.S.C. § 1927, because of defendants' unreasonable and vexatious multiplication of proceedings.[2]

On December 1, 2006, the district court denied the Municipality's motion for judgment on the pleadings, noting our ruling in the first appeal that the complaint adequately pleaded a First Amendment retaliation claim. It also granted plaintiffs'

---

[2]  28 U.S.C. § 1927 reads: "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

motion for sanctions because we had already decided that defendants' arguments lacked merit.[3] Quoting our decision in Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990), it noted that "[t]his is the type of multiplying of proceedings that § 1927 is designed to avoid . . . . Counsel for the Municipality acted 'in disregard of whether his conduct constitute[d] harassment . . . thus displaying a serious and studied disregard for the orderly process of justice.'" The court went on to say:

> Filing a motion for judgment on the pleadings, based in arguments already rejected by a court of higher level is clearly vexatious conduct that disregards the orderly process of justice and must be sanctioned . . . . If the Municipality, or its Counsel, disagreed with the First Circuit's decision, it should have filed a [petition for] certiorari before the United States Supreme Court.[4]

The district court ordered the defendants to pay $2,000 to the plaintiffs "in satisfaction of excess costs, expenses, and attorneys' fees they reasonably incurred in re-litigating an issues previously ruled on by a higher court."

---

[3] The standard for evaluating a motion to dismiss is the same as that for a motion for judgment on the pleadings. See, e.g., Citibank Global Markets, Inc., v. Rodríguez Santana, et al., 573 F.3d 17, 23 (1st Cir. 2009) ("to survive a motion to dismiss (or a motion for judgment on the pleadings), the complaint must plead facts that raise a right to relief above the speculative level."); see also Charles Alan Wright and Arthur R. Miller, 5 Federal Practice and Procedure § 1203 ("[T]he form and sufficiency of a statement of a claim for relief under Rule 8(a)(2) may be tested by a motion to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b)(6), [or] by a motion for judgment on the pleadings, Rule 12(c) . . . .").

[4] The defendants never filed such a petition.

2. Discovery violations

On September 18, 2006 , October 11, 2006, and January 9, 2007, plaintiffs moved to compel the production of requested discovery and for sanctions based on defendants' consistent failure to provide discovery, as well as their alleged failures to appear at scheduled depositions and to respond to a subpoena duces tecum. Defendants opposed the motions, arguing, inter alia, that they had not answered the discovery requests because they had objected to them.

On April 19, 2007, the district court granted plaintiffs' motions to compel and denied their motions for sanctions. Because the response to plaintiffs' motions to compel depended on the merits of defendants' objections to the requests for discovery, the court painstakingly addressed each of defendants' objections. Before compelling the production of any of the objected-to materials, it explained why it disagreed with the defendants that the requested information was either irrelevant or privileged.

In rejecting plaintiffs' request for sanctions, the court explained that it did not fault the defendants for refusing to produce the objected-to documents until the court had ruled on those objections. It did, however, admonish the defendants for not producing other documents to which it had not objected. It went on:

> We refuse . . . to make an account here of
> each document requested and produced, and
> those which remain to be produced. Defendants
> are to make such an exercise and comply with

this order by the time provided below . . . . Should counsel continue to have differences of this sort, the Court will schedule such a conference and will not hesitate to impose sanctions upon the party engaging in professional misconduct, or both parties if the Court finds both responsible.

3. Default Judgment

Despite the district court's admonishment, defendants failed to respond to the discovery requests on time. Instead, approximately two weeks after the new deadline for the discovery responses, defendants, according to plaintiffs, "delivered . . . a hodgepodge of documents, unnumbered, unidentified, and without any attempt to specify which document related to which request." Plaintiffs then asked the court to impose a default judgment as a sanction for defendants' failure to provide responsive discovery. On December 6, 2007, the district court granted that motion.

Again, the court carefully explained its reasoning. It said that the defendants' failure to respond adequately was "just the cherry on top of the sundae," in light of defendants' many other failures to abide by its orders. It described the troubled history of the discovery process in this case and how it had previously sternly warned defendants that it would issue sanctions for failure to comply with its April 19, 2007 order. The court also listed four separate orders it had issued during the course of the litigation warning defendants that it would issue sanctions if they failed to cooperate with discovery, and also cited its

December 1, 2006 order imposing sanctions for defendants' "vexatious" and "stubborn" conduct.

4.  The "Motion to Set Aside Default"

A hearing on damages was set for March 24, 2008.  On Easter Sunday, the eve of trial, the Municipality moved in the district court to set aside the default judgment, arguing that the "recent" decision of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), mandated that result.  In fact, Twombly had been decided in May 2007 -- ten months before the Municipality's motion "to set aside default" and two months before the entry of default judgment. In their motion, defendants once again argued that the complaint did not state a claim for relief.  This time, they added the new twist that "under Twombly, plaintiffs' complaint would never have survived defendants' Rule 12(b)(6) motion."

On March 24, 2008, the district court rejected the "eleventh hour" motion as both "untimely" and "without merit."  The court characterized the motion as a "misnamed" motion for reconsideration of the defendants' earlier motion for judgment on the pleadings, because it only argued the sufficiency of the pleadings and did not otherwise argue that the default was an abuse of discretion.  The court stated that:

> [U]nder the more stringent Twombly standard, Plaintiffs still plead a cause of action. They argue that they were entitled to some payments under a contract with the Municipality and that the new Mayor, a member of the PDP, refused to pay them only because

-10-

of Plaintiffs' association with the former
Mayor, a member of the NPP.

Citing our earlier decision in this case, the court remarked that "said discrimination is exactly what the First Amendment is designed to protect, and therefore, [plaintiffs] have plead enough to show plausible entitlement to relief under the First Amendment." After the damages hearing, the court entered judgments of $180,000, plus pre- and post-judgment interest, for both Remexcel and Kortright. This appeal followed.

## II.

Defendants challenge the imposition of the default judgment as a sanction for their repeated discovery violations. We review the entry of a default judgment for abuse of discretion. Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 25-26 (1st Cir. 2006). The party challenging this type of sanction "'bears a heavy burden of demonstrating that the trial judge was clearly not justified in entering an order of [default] under Rule 37.'" Id. at 25, (modification in original) (quoting Spiller v. U.S.V. Labs, Inc., 842 F.2d 535, 537 (1st Cir. 1988)).

The entry of a default judgment "provides a useful remedy when a litigant is confronted by an obstructionist adversary and plays a constructive role in maintaining the orderly and efficient administration of justice." KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 13 (1st Cir. 2003) (quotation marks and citation omitted). Nonetheless, it is a "drastic" sanction, Affanato v.

-11-

Merrill Bros., 547 F.2d 138, 140 (1st Cir. 1977) (quotation marks and citation omitted), that runs contrary to the goals of resolving cases on the merits and avoiding "harsh or unfair results." KPS & Assocs., 318 F.3d at 13 (quotation marks and citation omitted). "Since default judgments implicate sharply conflicting policies . . . the trial judge, who is usually the person most familiar with the circumstances of the case and is in the best position to evaluate the good faith and credibility of the parties, is entrusted with the task of balancing these competing considerations." Id. (quotation marks and citation omitted).

Defendants have but one argument in support of their contention that the district court abused its discretion in entering the default judgment -- namely, that the district court abused its discretion in ordering the production of the documents in the first place. "District courts exercise broad discretion to manage discovery matters," and we review discovery orders for abuse of discretion. Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003). "[W]e may reverse a district court only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." In re: Subpoena to Witzel, 531 F.3d 113, 117 (1st Cir. 2008) (quotation marks and citations omitted).

The court carefully categorized the interrogatories and document requests by the type of information sought, and then

-12-

explained why the information in each category was relevant.  For example, for one such category the court explained:

> All of the questions and requests for documents directed to establish the reasons for the terminations or non renewal of Plaintiffs' contract and the persons responsible for or having knowledge of these reasons are clearly relevant to determine whether the termination of their contracts was neutral or discriminatory in nature.  Also, all questions that might lead to information about the circumstances surrounding the termination or non renewal of Plaintiffs' contract with the Municipality are relevant as well.

For another category of requests, the court explained that "questions related to changes in the Municipality's personnel after Mayor Arlequín took over are relevant to Plaintiffs' allegations that the Mayor engaged in a custom and/or practice of discriminating against all employees and contractors hired or engaged by the prior administration."  In the end, almost every objection was categorized in this manner and the court's rejection of it explained.  The scope of discovery is broad, and "to be discoverable, information need only appear to be 'reasonably calculated to lead to the discovery of admissible evidence.'"[5]

---

[5] The district court recognized this principle, writing, for example, that "[t]he production of said evidence might lead to circumstantial evidence in support of Plaintiff's case."  In support of that conclusion, the court cited our decision in Pueguero-Moronta v. Gabriel Santiago, 464 F.3d 29, 45 (1st Cir. 2006), for the proposition that "[a] plaintiff bringing a political discrimination claim bears the burden of producing sufficient direct or circumstantial evidence from which a jury reasonably may infer that [his] constitutionally protected conduct -- in this

Cusumano v. Microsoft Corp., 162 F.3d 708, 716 n.5 (1st Cir. 1998) (quoting Fed. R. Civ. P. 26(b)(1)).

The district court was patient, careful, and fair in its choice of sanctions. The court had issued four warnings over the course of the litigation specifically directed at defendants' failures to respond to discovery requests. It had previously issued milder sanctions for defendants' "vexatious" behavior. In April 2007, as noted, the court painstakingly addressed each of the objected-to discovery requests and explained why they were relevant, declining to issue sanctions at that time but again warning defendants of the harsh possibilities for failure to respond. Further, it reprimanded defendants at that time for failing to produce documents to which it had not objected, and for objecting to requests for documents that it was automatically obligated to produce "without awaiting a discovery request" pursuant to Federal Rule of Civil Procedure 26(a)(1). The court's choice of sanctions as well as the sternness of its warnings gradually escalated over the course of the litigation in response to defendants' persistently troublesome conduct. Under these circumstances, the district court did not abuse its discretion by entering a default judgment in response to defendants' repeated

case, political affiliation . . . was a substantial or motivating factor behind [his] dismissal." (Emphasis added, other modifications in original.)

-14-

failures to respond to discovery.  Indeed, its handling of the vexatious discovery conduct was exemplary.

### III.

Defendants concede that "an entry of default prevents the defendant from disputing the truth of well-pleaded facts in the complaint pertaining to liability."  Conetta v. Nat'l Hair Care Ctrs., Inc., 236 F.3d 67, 75-76 (1st Cir. 2001) (citing Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 693 (1st Cir. 1993)).  They argue, however, that they may still contest the sufficiency of the pleadings before them.  It is true that in the normal case after the entry of default a "defendant may still contest a claim on the ground that the complaint does not allege facts that add up to the elements of a cause of action."  Id. at 76; see also Gowen v. F/V Quality One, 244 F.3d 64, 67 n.2 (1st Cir. 2001) ("The default judgment is conclusive as to facts but does not always defeat later legal objections" such as failure to state a claim).

This, however, is not the normal case.  We have previously held that plaintiffs' claim does adequately plead the elements of a cause of action.  Ramírez, 447 F.3d 25 ("Remexcel and Kortright must plead that they engaged in protected association, that they were entitled to payment under their contracts, and that the Municipality denied the payment in retaliation for their exercise of associational rights.  These elements are adequately pleaded in the complaint.") (citing Baker

-15-

v. Coxe, 230 F.3d 470, 475 (1st Cir. 2000)).  In light of this history, the law of the case doctrine poses an obstacle to our reconsideration of the adequacy of the complaint.

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983).  The doctrine has two branches.  The first, relied upon by the district court in rejecting the motion for judgment on the pleadings, "'prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case.'"  United States v. Wallace, 573 F.3d 82, 88 (1st Cir. 2009) (quoting  United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004)). The second branch, which is implicated here, "binds successor appellate panels in a second appeal in the same case unless certain circumstances justify reconsideration." Negron-Alameda v. Santiago, No. 08-2360, 2009 WL 2605717 at *3 (1st Cir. Aug. 26, 2009).  This branch "contemplates that a legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court."  Moran, 393 F.3d at 7.  We have described the many "salutary policies" that underlie the law of the case doctrine, including:  "afford[ing] litigants a high degree of certainty as to what claims are -- and are not -- still open for adjudication"; "further[ing] the abiding

-16-

interest shared by both litigants and the public in finality and repose"; "promot[ing] efficiency"; and "increas[ing] confidence in the adjudicatory process."  Ellis v. United States, 313 F.3d 636, 647 (1st Cir. 2002).

There are, however, exceptions to the law of the case doctrine's "presumption against reconsideration."  Id. at 647-48.  Defendants argue that one such exception is applicable here involving "a material change in controlling law."  Id. at 648.  In Doe v. Anring, for example, we revisited an earlier ruling because in the period between the first and second appeal we had, in a different case, "reconsidered the interpretation of federal law set forth in Doe v. Anrig I, and we concluded that it was erroneous."  728 F.2d 30, 31 (1st Cir. 1984).

The defendants argue that we have a similar situation here because, in the period between the first appeal and this one, the Supreme Court clarified the standard for determining the adequacy of pleadings.  In Twombly, 550 U.S. 544, the Supreme Court rejected an earlier description of the standard for stating a claim, set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), and quoted in our first decision in this case.  Ramirez, 447 F.3d at 24-25.  Twombly rejected Conley's statement that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46).  The

Twombly court explained that:

> We could go on, but there is no need to pile
> up further citations to show that Conley's "no
> set of facts" language has been questioned,
> criticized, and explained away long
> enough. . . . The phrase is best forgotten as
> an incomplete, negative gloss on an accepted
> pleading standard: once a claim has been
> stated adequately, it may be supported by
> showing any set of facts consistent with the
> allegations in the complaint.

Id. at 562-63.  Twombly explained that a sufficient complaint must

contain "allegations plausibly suggesting (not merely consistent

with)" entitlement to relief.  Id. at 557.  It further explained:

> [W]e do not require heightened fact pleading
> of specifics, but only enough facts to state
> a claim to relief that is plausible on its
> face.  Because the plaintiffs here have not
> nudged their claims across the line from
> conceivable to plausible, their complaint must
> be dismissed.

Id. at 570.

We agree with the district court that even after

Twombly's clarification of the pleading standard, plaintiffs have

still pleaded a cause of action.[6]  Although our earlier opinion

parenthetically quoted Conley's "no set of facts" language,

Ramirez, 447 F.3d at 24-25, we did not base our decision in that

---

[6] The district court admonished the defendants for raising this argument so late in the game -- Twombly had been decided ten months before the defendants moved for re-evaluation of the pleadings in light of that case.  Furthermore, Twombly had already been decided when the district court entered the default judgment. Nevertheless, because the district court reached the arguments on the merits, we do as well.

-18-

case on the remote possibility that plaintiffs would eventually show some unknown set of facts to support their claim. Indeed, in describing how Conley's "no set of facts" language has been "questioned, criticized, and explained away long enough," the Supreme Court listed our circuit as an example of the "judges and commentators [who] have balked at taking the literal terms of the Conley passage as a pleading standard." Twombly, 550 U.S. at 562. It parenthetically quoted our opinion in O'Brien v. DiGrazia, 544 F.2d 543, 546 n.3 (1st Cir. 1976), where we stated that "when a plaintiff under § 1983 supplies facts to support his claim, we do not think that Conley imposes a duty on the courts to conjure up unpleaded facts that might turn a frivolous claim of unconstitutional official action into a substantial one." Although we did not explain our earlier decision using Twombly's language, we essentially concluded, in conformity with Twombly's requirements, that plaintiffs had pleaded "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Twombly does not, therefore, present a change in intervening law that justifies the application of the exception to the law of the case doctrine dependent on such a change. Ellis, 313 F.3d at 648.

The law of the case doctrine thus bars our reconsideration of defendants' claim that the plaintiffs have not pled a cognizable theory of retaliation under the First Amendment. If defendants feel victimized by this outcome, they have only

-19-

themselves to blame.  Their stubborn refusal to participate in discovery precluded the possibility of any factual development that might have helped their case.  Disobeying the orders of the trial court has exacted a heavy price.  Defendants have now forfeited the opportunity to make their arguments on a more developed record.

Affirmed.