# United States Court of Appeals
## For the First Circuit

Nos. 11-1493, 11-1657

COMPANION HEALTH SERVICES, INC.,

Plaintiff, Appellee/Cross-Appellant,

v.

GEORGE KURTZ and MARY KAY REID,

Defendants, Appellants/Cross-Appellees.

MAJORS MOBILITY, INC., MAJORS MEDICAL, INC., MMS NORTHERN
DETROIT, INC, MAJORS MOBILITY-ZANESVILLE, LLC, STUART SHERMAN,
JACOB & WEINGARTEN, P.C., J.P. MORGAN CHASE BANK, N.A.,

Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, U.S. District Judge]

Before

Selya, Boudin and Stahl, Circuit Judges.

Scott McConchie, with whom Thomas F. Maffei and Griesinger,
Tighe & Maffei, LLP were on brief, for appellants, cross-appellees.
Dustin F. Hecker, with whom Ian H. Moss and Posternak
Blankstein & Lund, LLP were on brief, for appellee, cross-
appellant.

March 29, 2012

**STAHL**, <u>Circuit Judge</u>.  After three years of drawn-out proceedings in this contract dispute between plaintiff-appellee Companion Health Services, Inc. (Companion) and defendants-appellants George Kurtz and Mary Kay Reid and their various business entities, the district judge imposed a default as to all counts based on discovery violations by the defendants.  The district court eventually lifted the default except as to Companion's veil piercing claim, allowing the substantive claims to go to trial.  After a jury found for Companion and awarded over $1 million in damages, Kurtz and Reid, who were personally liable, appealed the district court's various orders pertaining to the default on the veil piercing claim.  In this close case, because the district court imposed such a severe sanction based on a very limited slice of the relevant facts, we vacate the sanction and remand for further proceedings.  We, however, deny Companion's cross-appeal for prejudgment interest.

## I. Facts & Background

This appeal relates to the discovery process during the litigation of a Massachusetts state law contract dispute between Companion and George Kurtz and Mary Kay Reid (together, the individual defendants), as well as Majors Medical, Inc., Majors Mobility, Inc., Majors Mobility-Zanesville, LLC, and MMS Northern Detroit, Inc. (the corporate defendants) stemming from a deal to sell durable medical equipment (DME) in Wal-Mart stores.  Companion

-2-

was authorized to license space within Wal-Mart stores to companies that sell DME. In 2005 and 2006, Companion entered into licensing agreements with the defendants for three locations in Ohio and Indiana. In January 2007, Companion contracted with the defendants to take over twenty additional locations from a failing licensee, entering into what the parties denote as "the Master Agreement."[1] By March 31, 2007, the defendants, having failed to perform, shut down operations in all locations. Thereafter, on November 7, 2007, Companion sued the defendants in the United States District Court for the District of Massachusetts, alleging various breach of contract and related tort claims under state law,[2] and, significantly, requesting to pierce the corporate veil, such that the liability of the companies would also be imposed on the individual defendants, the two principals of all of the companies.[3]

The litigation began fairly smoothly. After the complaint and answers were filed in November and December of 2007,

---

[1] The parties also entered into other agreements which they call the Evansville and Zanesville Agreements.

[2] Companion's claims included breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, misrepresentation, unjust enrichment, and violations of Mass. Gen. Laws ch. 93A.

[3] Kurtz owns 70% of Majors Mobility, a Michigan corporation, and Reid owns the remaining 30%. Majors Mobility is the only member of Majors Mobility-Zanesville, LLC, a Michigan limited liability company. Reid is the owner of MMS Northern Detroit, a Michigan corporation. Companion also sued a supposed Michigan corporation called "Majors Medical," but Kurtz and Reid denied having knowledge of that company.

-3-

respectively, the district court held a scheduling conference on January 28, 2008. The parties submitted their initial disclosures on schedule on February 29, 2008. However, on May 6, 2008, the day after submitting their first responses to Companion's interrogatories and document requests, the defendants' attorneys (from Hanify & King) moved to withdraw, citing an "irretrievable breakdown in the attorney-client relationship."[4] Companion opposed the motion to withdraw, noting that local rules prevented the corporate defendants from appearing before the court without representation, and urged the court to deny the motion unless the withdrawal could be contingent upon the appearance of successor counsel. The district court agreed, noting that the motion would not be allowed until successor counsel had filed an appearance.

Companion's attorney felt that the May 5 responses to the interrogatories and document requests, which were in large part related to the veil piercing claim, were inadequate, and relayed this concern to Hanify & King on May 14, 2008, via a discovery letter.[5] On May 19, 2008, Hanify & King told Companion's attorney

---

[4] Hanify & King moved to withdraw its representation of both the corporate and the individual defendants.

[5] In their May 5 responses, the defendants made general objections to the time period of the requested information, alleging that only post-contract information was relevant. Companion countered that pre-contract information was relevant to the veil piercing claim. The defendants also objected to Companion's definition of terms for purposes of setting the scope of the discovery requested. Further, the defendants made specific objections to various interrogatories and document requests,

that they were close to getting successor counsel and that it would respond to the discovery letter by May 23, 2008. However, they did not respond, and on June 2, 2008, Companion filed its first motion to compel responses, asserting that the responses had been inadequate and that not a single document had been produced. The district court did not immediately rule on the motion.

Four months after Hanify & King's motion to withdraw, the defendants finally succeeded in obtaining new counsel, and attorneys from Crowe & Dunn filed their appearances on September 2, 2008.[6] On November 4, the district court granted Hanify & King's motion to withdraw.

Proceeding with discovery, Companion's attorney and the defendants' attorneys from Crowe & Dunn agreed that Kurtz and Reid would be deposed on November 11 and 12, 2008, in Boston.[7] On November 10, Crowe & Dunn called Companion's counsel and informed him that Kurtz and Reid had decided they would not attend their

claiming that many of the requests were overbroad, that much of the information requested was irrelevant to Companion's claims, or that the information and documents requested did not exist or were protected by attorney-client privilege. Reid refused to answer one particular interrogatory, claiming that a referred-to affidavit was not attached. However, the defendants asserted that they would make some documents requested available to Companion and answered some interrogatories in whole or in part.

[6] Like Hanify & King, Crowe & Dunn represented both the corporate and individual defendants.

[7] Kurtz's and Reid's depositions had initially been noticed in July 2008 and were again noticed in September 2008, after Crowe & Dunn's appearance.

depositions. After confirming on November 17 that Kurtz and Reid continued to refuse to come to Boston for their depositions, on November 19, Companion filed a motion to compel the depositions of Kurtz and Reid in Boston. The individual and corporate defendants opposed the motion collectively, making jurisdictional arguments as to why the depositions should not take place in Boston.

On December 5, while the motion to compel depositions was pending, Crowe & Dunn provided Companion with a sparse supplemental response to the pending interrogatories and document requests, which did not give Companion a single new piece of information.[8] On December 18, 2008, the parties filed a joint motion to extend the scheduling order, citing the difficulty in carrying out the depositions.[9] On December 22, 2008, the district court granted the

---

[8] The supplemental response contained ten general objections to the interrogatories and document requests. Further, the response stated a combination of one or more of the following objections to each of Companion's thirty-three requests: (1) the information requested was subject to attorney-client privilege or the work-product doctrine or was otherwise confidential; (2) all responsive documents had previously been produced or there were none in the defendants' possession; (3) the request was overly broad and unduly burdensome; (4) the requested information was not reasonably calculated to lead to discovery of evidence admissible at trial; (5) the requested information inappropriately pertained to matters related to post-judgment relief; (6) the documents were a matter of public record equally accessible by Companion; and (7) the definition of a term in the request was ambiguous.

[9] Companion had previously filed two assented-to motions to extend the scheduling order. The first motion to extend was filed July 18, 2008, and was based on the defendants' allegedly inadequate discovery responses. The second, filed October 17, 2008, was based on the defendants having recently retained successor counsel. A fourth motion to extend was eventually filed

motion to compel the depositions without explanation, ordering that the individual defendants appear for their depositions in Boston within forty-five days. A day later, on December 23, the district court granted the December 18 motion to extend the scheduling order, setting a new deadline of February 27, 2009, for the end of discovery.

On January 7, 2009, allegedly in reliance on promises by Crowe & Dunn that discovery responses beyond the December 5 supplemental response were forthcoming, Companion withdrew its motion to compel discovery responses. The motion had been filed on June 2, 2008, and was never ruled on by the district court. However, no further responses came. With little progress being made, on March 11, Companion renewed its motion to compel responses, which was opposed separately by each of the individual defendants as well as by the corporate defendants, largely for the same reasons as were stated in their initial objections.[10]

Meanwhile, Companion had sought the names and addresses of the corporate defendants' former employees in its

---

on February 23, 2009, based in part on the inability of Companion's president, Kimberly Mairs, to attend her deposition as initially scheduled.

[10] On March 30, 2009, before any order by the district court on Companion's motion to compel, the corporate defendants filed their own motion to compel, alleging that Companion's discovery responses had been inadequate. Companion opposed the motion, but it agreed to provide some further discovery to the extent that the discovery was not confidential, while still objecting to some requests as irrelevant or burdensome.

interrogatories; this information was never provided. Companion eventually obtained the names of two former employees from a non-involved third party and scheduled their depositions to be taken on April 3, 2009. On April 2, 2009, the defendants filed a motion for a protective order, seeking to prevent Companion from conducting the two depositions the next day. The defendants' objection to the depositions was that Kurtz and Reid allegedly would have been unavailable to listen in on the phone. On April 3, 2009, the day for which the depositions were scheduled, Companion filed its opposition to the motion for the protective order, and the judge denied the motion without explanation.

The depositions went forward on April 3, and during the depositions, Companion obtained the names of additional former employees. On April 14, 2009, Companion filed a motion to extend the time for filing summary judgment petitions in order to allow time to depose those additional employees. The next day, the district court granted the motion to extend.

On May 20, 2009, the defendants filed five separate motions for summary judgment, arguing that it was clear that the contract with Companion did not contain all material terms and was therefore not binding on them, and further, that piercing the corporate veil was inappropriate.[11]  On June 26, 2009, Companion

---

[11] Companion here asserts, in support of its argument that the defendants were obstructionist throughout the discovery process, that some of the documents that the defendants attached to their

-8-

filed its opposition to the motions for summary judgment, arguing that an agreement between the parties was reached and that the evidence merited a trial as to piercing the corporate veil.

On October 2, 2009, while the motions for summary judgment were still pending, Crowe & Dunn moved to withdraw as counsel for all of the defendants, citing a substantial breakdown of the attorney-client relationship and an unreasonable financial burden on the firm given that the defendants "remain[ed] in substantial arrears for their legal fees."[12] Companion "responded" to (but did not "oppose") the motion; Companion did not request that the motion's grant be contingent on the appearance of successor counsel as it had previously done but instead focused on its desire that the summary judgment hearing take place on December 2, 2009, as scheduled.

On November 17, 2009, the district court responded in a single order to Companion's pending motion to compel and to the recent motion to withdraw. As to Companion's motion to compel, the judge considered each of the defendants' objections, overruling

summary judgment motion were responsive to the previously unanswered discovery requests. Companion cites to the corporate documents pertaining to MMS Northern Detroit and Majors Mobility, Inc. However, it is unclear to us to which request these documents were responsive or when they ought to have been produced, because Companion has not enlightened us. Because this argument does not affect our holding, we do not address it further.

[12] Thomas Maffei, the defendants' third attorney, later told the district court that their previous attorneys had been paid hundreds of thousands of dollars.

-9-

both general objections[13] as well as many of the specific objections, ordering responses and production, while finding that no further answer or production was required for some of Companion's interrogatories and requests.[14]   The district court granted the motion to withdraw without explanation and without requiring the appearance of successor counsel.[15]

On December 2, 2009, with the summary judgment hearing set to go forward that day, Kurtz, who was in Michigan at the time, called the district court's clerk and told him that he was unrepresented and would be unable to attend the hearing.  The clerk informed Kurtz that the judge had a "mountain" of paper and was ready to proceed with the hearing on the fully briefed motion.  The clerk told Kurtz to call back later that day to find out the results of the hearing.

The hearing in fact proceeded later that day.  At the end of the hearing, Companion's counsel requested that a deadline be

---

[13]   The first general objection was to the timeline of the requests; Companion had offered a compromise start date of January 1, 2004, which the district judge adopted.  As to the second general objection pertaining to Companion's definition of terms, the district court overruled it without further comment.

[14] The district court also addressed the corporate defendants' motion to compel in the same order, denying it in its entirety, stating only that "the answers provided [by Companion] are adequate."

[15]   The defendants were then unrepresented for about four months, until March 8, 2010, when attorneys from Griesinger, Tighe & Maffei entered their appearances.

set for compliance with the order granting the motion to compel. Mindful of the fact that the defendants were unrepresented, the district court named December 11, 2009 (nine days later) as the deadline. On December 15, 2009, the district court denied the defendants' various motions for summary judgment "substantially for the reasons stated in the plaintiff's opposition memorandum."

On December 17, 2009, having received nothing by the December 11 production/response deadline, Companion filed a motion for sanctions under Federal Rule of Civil Procedure 37, requesting default on all counts. In the alternative, as most of the discovery sought pertained to veil piercing, Companion requested default on that count alone.

On January 5, 2010, while the motion for sanctions was pending but before a hearing date had been set, Kurtz again called the clerk. The clerk informed Kurtz that the summary judgment issue had been decided.[16] Kurtz requested that the papers be sent to him and provided the clerk with his address; shortly thereafter, he received the docket sheet in the mail. Kurtz's address was handwritten on the envelope. He did not receive any other documents at that time or up to the point when he retained Griesinger, Tighe & Maffei in March. In addition to the December 15 decision denying summary judgment, the docket sheet reflected

---

[16] It is unclear from the record whether the clerk told Kurtz that the motions had been denied or simply that a decision had been reached.

that the court had ordered that discovery be produced by December 11 and also that a motion for sanctions had been filed on December 17. The docket sheet did not reflect any hearing on the motion for sanctions.

On January 15, 2010, the court scheduled a hearing on the motion for sanctions for February 3, 2010. The docket sheet noted that the corporate defendants had to be represented by counsel in order to appear and that notice of the hearing was mailed to all defendants. However, none of the defendants received the notice, as the corporate address had changed as of September 2009, and the court did not have the new address on record.[17] The notice was not sent to Kurtz at the address that he had provided to the clerk during the January 5, 2010 call.[18]

----

[17] Local Rule 83.5.2(e) mandates that attorneys and pro se parties notify the court of any changes in address; however, the corporate defendants, as unrepresented corporate parties, did not fall squarely into either of these categories. See LR, D. Mass. 83.5.2(d) ("The court will not recognize the appearance of a firm or professional corporation unless it is accompanied by the appearance of at least one (1) attorney."); Schreibman v. Walter E. Heller & Co. of P.R. (In re Las Colinas Dev. Corp.), 585 F.2d 7, 13 (1st Cir. 1978) ("One of the time-hallowed restrictions on corporations has been that, in court proceedings, they must be represented by a licensed attorney."). Because this issue is not necessary to our holding, we do not address it further.

[18] The individual defendants, who unlike the corporate defendants were clearly pro se parties, had an obligation to notify the court of their address and Kurtz's informal attempt to give the clerk his address did not satisfy the rule, as it was not filed. See LR, D. Mass. 83.5.2(e)(2) ("[E]ach party appearing pro se is under a continuing duty to notify the clerk of any change of address and telephone number. Notice under this rule shall be filed in this case."). Therefore, the individual defendants, at

No one appeared for any of the defendants at the February 3 hearing, and with little argument or discussion, the district court orally granted the motion in full, imposing default as to all counts. On February 22, 2010, the court set a date of March 9, 2010, for a hearing on damages.

According to Kurtz, he first contacted his lawyer in Michigan about retaining a new lawyer in Boston on February 10, 2010, and got in touch with the office of his eventual third attorney, Thomas Maffei of Griesinger, Tighe & Maffei, in mid-February 2010. Maffei and Kurtz first spoke sometime between Wednesday, March 3 and Friday, March 5, 2010. Maffei then consulted PACER and realized that the damages hearing was to take place on the following Tuesday, March 9. He entered his appearance for all the defendants on Monday, March 8, 2010, and also requested that the damages hearing be continued. Companion opposed the continuance. The hearing began on March 9 as scheduled, but at the hearing, the district court agreed to continue to May 19, 2010, stating its expectation that the defendants would file a motion to lift the default.

The defendants filed their motion to lift the default on March 31, 2010. They argued that the sanction of default judgment

---

least, were not entitled to notice of proceedings at their current addresses. See id. ("Any . . . party appearing pro se who has not . . . provided the clerk with his current address in accordance with this rule shall not be entitled to notice.").

was overly harsh, because it required "more than mere negligence," such as willfulness or bad faith. They also argued that they had substantially complied with Companion's discovery requests, and would further comply "in short order." Further, they argued that they were unaware of their obligations regarding discovery or responding to the motion for sanctions, as they were unrepresented and did not understand the implications of the information on the docket sheet. Finally, the defendants argued that they had legitimate defenses to Companion's claims on the merits. Companion opposed lifting the default, arguing that the sanction was appropriate, and that there was no good cause to lift the default under Federal Rule of Civil Procedure 55(c).

On June 9, 2010, after the agreed-upon continuance, the hearing on the motion to lift the default took place before the district court. The court heard argument from the parties and then issued a somewhat lengthy oral decision. First, the district court explicitly stated that it did not take Maffei's "benign [] view" of the situation. Instead of viewing the individual defendants as negligent, the district court found that their discovery violations had been willful. Once Kurtz had the docket in early January, "it was apparent from the docket that a deadline for complying with the document request had passed and a motion for sanctions had been filed in response to it." The district court noted that while it was not clear that Kurtz knew of the date of the hearing on the

-14-

motion for sanctions, "the record indicates he was aware of the jeopardy and didn't do anything about it."

The district court then considered whether the sanction of default judgment was proportionate to the offense. Determining that the discovery sought went to the veil piercing claim, the district court decided that the "intermediate sanction" of default judgment only as to that count was appropriate. That way, the contract claims could be addressed on the merits.

After the district court announced its decision, the parties made further arguments. Maffei argued that Reid should be treated differently from Kurtz, as she appeared to have less involvement, but the judge reiterated that he saw the violations as "knowing and willful" and did not change his order. The district court did not make any other material factual findings, and did not make clear exactly which discovery violations were the basis of its ultimate sanction.[19]

_____

[19] On June 10, 2010, the next day, the individual defendants filed a motion for reconsideration, again arguing that the sanction was too harsh and that Reid should receive different treatment. Companion opposed the motion, which it stated "merely rehashe[d] the arguments that the [district court] already ha[d] considered and rejected." Companion's opposition described Reid's involvement in the underlying contract and deal, but offered no evidence of her involvement in the discovery abuses. On July 6, 2010, the district court denied the motion with little explanation, and did not address the issue of different treatment of Reid.

Thereafter, on July 14, 2010, Companion filed a motion for attorneys' fees and costs incurred in connection with the motion for sanctions, requesting a total of $7,763.13. All of the defendants opposed the motion. On March 31, 2011, after trial, the

-15-

Beginning on August 16, 2010, the district court presided over a seven-day jury trial. On August 25, 2010, the jury returned a verdict for Companion, awarding over $1 million in damages, including $86,073 more than Companion had requested in lost profits and other contract damages. Various post-trial motions, including Companion's motion to amend the judgment to include prejudgment interest that is now the subject of Companion's cross-appeal,[20] took place over the course of the next ten months. On May 2, 2011, the individual defendants filed the current appeal, challenging the district court's imposition of the veil piercing sanction;[21] on June 7, 2011, Companion cross-appealed the denial of the motion to amend the judgment and the judgment itself.

---

district court granted the motion, awarding Companion a sum of $5,000.00.

[20] On March 31, 2011, the district court entered its findings of fact and conclusions of law to accompany its order of judgment. In that order, the district court awarded Companion prejudgment interest only on the amount of damages it had requested but not on the additional $86,073 that the jury had awarded, considering this amount likely to represent attorney's fees and other fees. On April 4, 2011, Companion filed its motion to amend the judgment under Federal Rule of Civil Procedure 60(a), asking the court to award prejudgment interest as to all damages. The defendants opposed the motion. On May 17, 2011, the district court denied the motion electronically and without comment.

[21] In their notice of appeal, Kurtz and Reid also appealed the district court's failure to lift the sanction of default and the denial of the motion for reconsideration. However, in their briefs on appeal, the parties analyze the issue holistically, asking for a global review of the imposition of the default as to the veil piercing count. We accept their invitation to structure our analysis around the imposition of the default sanction and do not address the other two orders.

-16-

## II. Discussion

### A. The Appeal by Kurtz and Reid

This court reviews for abuse of discretion a district court's imposition of default as a sanction under Federal Rule of Civil Procedure 37. Crispin-Taveras v. Municipality of Carolina, 647 F.3d 1, 7 (1st Cir. 2011) (citing Remexcel Managerial Consultants, Inc. v. Arlequín, 583 F.3d 45, 51 (1st Cir. 2009)). We review the factual findings upon which the sanction is based for clear error. Koken v. Black & Veatch Constr., Inc., 426 F.3d 39, 53 (1st Cir. 2005). A court of appeals is not concerned with whether it would have itself imposed the particular sanction chosen by the district court, Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642 (1976) (per curiam), and instead typically defers to the district court, as "the trial judge . . . is usually the person most familiar with the circumstances of the case and is in the best position to evaluate the good faith and credibility of the parties . . . ," Remexcel, 583 F.3d at 51 (citing KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 13 (1st Cir. 2003)). The party challenging the imposition of a default judgment "bears a heavy burden of demonstrating that the trial judge was clearly not justified in entering an order of default under Rule 37." Id. (quotation marks and alterations omitted). But in evaluating the appropriateness of the sanction, we need not examine evidence in the record beyond that considered by the district court

when it imposed the sanction. See Robson v. Hallenbeck, 81 F.3d 1, 3 (1st Cir. 1996). Further, while we give deference to the district court, we will not "rubber-stamp" the imposition of a sanction. See Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 5 (1st Cir. 2006) (quoting Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002)).

Federal Rule of Civil Procedure 37(b) provides a "veritable arsenal of sanctions" in the context of discovery, Crispin-Taveras, 647 F.3d at 7 (internal quotation marks omitted), including the imposition of "default judgment against [a] disobedient party" for failure to obey a court order, Fed. R. Civ. P. 37(b)(2)(A)(vi). The district court can also apply this sanction where a party fails to provide answers to interrogatories or produce documents for inspection, or for failure of a party to attend its own deposition. See Fed. R. Civ. P. 37(d)(3). While default judgment is considered a "drastic sanction," its entry "provides a useful remedy when a litigant is confronted by an obstructionist adversary and plays a constructive role in maintaining the orderly and efficient administration of justice." Crispin-Taveras, 647 F.3d at 7 (quoting Remexcel, 583 F.3d at 51) (internal quotation marks omitted). As this remedy is "contrary to the goals of resolving cases on the merits and avoiding harsh or unfair results," the district court, in its superior on-the-ground position, must balance these "competing considerations" before

-18-

entering default.  Remexcel, 583 F.3d at 51 (quoting KPS, 318 F.3d at 13) (internal quotation marks omitted).  A district court need not consider or try lesser sanctions before imposing default, Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 25 (1st Cir. 2006) (quoting Damiani v. R.I. Hosp., 704 F.2d 12, 15 (1st Cir. 1983)), but a failure to do so can contribute to a finding that the district court abused its discretion, Benitez-Garcia, 468 F.3d at 6 (citing Crossman v. Raytheon Long Term Disability Plan, 316 F.3d 36, 39-40 (1st Cir. 2002)).  As always, the goal of a sanction is both to penalize wrongful conduct and to deter future similar conduct by the particular party and others "who might be tempted to such conduct in the absence of such a deterrent."  Nat'l Hockey League, 427 U.S. at 643.

Here, the district court imposed the sanction of default as to the veil piercing count based on a combination of oral orders: first, when it granted the motion for sanctions, and second, when it denied in part the motion to lift the default.  In both cases, the district judge restricted its analysis to Kurtz's and Reid's failure to respond to the December 11, 2009 production/response deadline, the only basis for Companion's motion for sanctions.  That deadline had been set nine days earlier, during which time the individual defendants, here, the appellants, were unrepresented by counsel.  However, the district judge found the failure to comply with the deadline to be "willful," where at

-19-

least Kurtz was "aware of the jeopardy [of sanctions] and didn't do anything about it." Though there was perhaps enough litigation misconduct by Kurtz and Reid for a default sanction if the totality of their behavior during the entire history of the case had been considered, the district court based the sanction on a single instance, for which there were significant and legitimate mitigating excuses, and did not make sufficient factual findings to support its ultimate sanction. Under those circumstances, we decline to extend our precedent to find that the sanction of default on the veil piercing count was appropriate.

This sanction apparently was based on a single instance of misconduct, although arguably a continuing one. Our precedent makes clear that a severe sanction, such as default or dismissal, is inappropriate in most cases when based on one incident. See Crossman, 316 F.3d at 39 ("A single instance of prohibited conduct cannot be a basis for [a severe sanction] if the conduct was not particularly egregious or extreme.") (quoting Top Entm't, Inc. v. Ortega, 285 F.3d 115, 118 (1st Cir. 2002)) (internal quotation marks omitted). The conduct here cannot qualify as "particularly egregious," where the defendants were unrepresented and unaware of the deadline at the time it was set. And while we generally "give a wide berth to the presider's judgment that, under all the circumstances, [a] proffered justification [for failure to comply with a court order] is insufficient," Tower Ventures, 296 F.3d at

47, this is a case where we must ask more of the district court before affirming the imposition of such a harsh sanction apparently based on such a thin slice of misconduct.

This would be a different case if, after allowing Kurtz and Reid to respond to a much broader charge of misconduct, the district court had supportably found that they had themselves engaged in a deliberate pattern of stonewalling with the aim of frustrating effective discovery and the progress of the case.[22] For example, the court might have found that the four extensions to the scheduling order resulted from the defendants' misconduct; that the individual defendants had acted improperly in objecting to their depositions and those of others; or that they had withheld documents in bad faith.  After giving Kurtz and Reid a specific opportunity to respond to and explain their conduct as to individual incidents, and distinguishing between their own actions and those of their lawyers not directed by Kurtz and Reid, the court might have been able to find them as individuals willfully responsible for "a pattern of prolonged and vexatious obstruction of discovery with respect to highly relevant records."  S. New Eng. Tel. Co. v. Global NAPs Inc. (SNET), 624 F.3d 123, 148 (2d

---

[22]  Kurtz and Reid were represented by three sets of attorneys over the course of the litigation, and their last attorney stated to the district court that substantial legal fees had been paid to the previous attorneys.  The district court might therefore have drawn an inference adverse to Kurtz and Reid from this set of circumstances.

Cir. 2010) (internal quotation marks and alterations omitted) (citing this pattern of conduct as a basis for the imposition of default judgment on a veil piercing count as a sanction); see also Crispin-Taveras, 647 F.3d at 7 (stating that default judgment "provides a useful remedy when a litigant is confronted by an obstructionist adversary and plays a constructive role in maintaining the orderly and efficient administration of justice"). However, the district court did not mention any of the foregoing as part of the basis for the sanction, and therefore we do not consider them in our review. See Robson, 81 F.3d at 3 (declining to consider potential pattern of litigation misconduct where only one incident formed the basis for the district court's sanctions order).

While the imposition of a default judgment on a veil piercing claim is not unheard of in this circuit, see Global NAPs, Inc. v. Verizon New Eng. Inc. (Verizon), 603 F.3d 71, 93-95 (1st Cir. 2010), cert. denied, 131 S. Ct. 1044 (2011), in that case, the misconduct upon which the default sanction was based was significantly more extreme than missing a single production deadline. In Verizon, this court affirmed the imposition of default judgment on a veil-piercing claim, where "the [district] court made a number of factual findings that [we]re well supported in the record" showing that the counterclaim defendants had "violated [the district court's] orders and committed willful

-22-

discovery misconduct," including the destruction of evidence and lying to the court. Id. at 93-94. The Second Circuit later also affirmed the same sanction in a related case, basing its holding on the willfulness behind the violations and the fact that the conduct of the sanctioned parties was "not isolated but rather formed a pattern of prolonged and vexatious obstruction of discovery with respect to highly relevant records" pertaining to the veil piercing claim. SNET, 624 F.3d at 147-48 (internal quotation marks and alterations omitted). The Second Circuit also considered important the fact that the parties were unmistakably on notice of their discovery obligations at the time of the violations, given the clarity of the district court's orders and its previous warnings. Id. at 148.

Though we by no means suggest that the defendants here were faultless, for they were not, the facts of this case suggest less egregious circumstances than those in Verizon and SNET. There was no destruction of evidence or explicit finding of false statements to the court. See SNET, 624 F.3d at 147-48; Verizon, 603 F.3d at 94. There were no clear warnings that sanctions were imminent. See SNET, 624 F.3d at 148 (basing affirmance of default sanction in part on district court's warning that default would be imposed); Remexcel, 583 F.3d at 52 (noting that repeated, stern warnings by the district court supported the appropriateness of default judgment). Kurtz and Reid were unrepresented by counsel

-23-

from the time of the discovery deadline to the time the default was originally imposed and therefore were not unmistakably on notice of their discovery obligations at the time they initially violated the district court's December 2, 2009 order. See SNET, 624 F.3d at 148 (finding no abuse of discretion in imposition of default judgment where party was clearly on notice of discovery obligations). Though not in formal compliance with the local rules, Kurtz did attempt to leave a current address with the clerk when he called on January 5, 2010, but received only the single communication containing the docket sheet (in an envelope bearing a handwritten address) and thereafter, no further notifications as to the district court proceedings. Finally, the district court did not make factual findings that the defendants had engaged in a pattern of obstruction or stonewalling. See SNET, 624 F.3d at 147-48 (emphasizing importance of pattern of prolonged obstruction in the determination of default judgment as an appropriate sanction).

While the imposition of default on a veil piercing count as a Rule 37 sanction could on some evidence be appropriate, here, the factors distinguishing this case from Verizon and SNET persuade us that, on the basis of the conduct considered by the district court and the factual findings it made, such a sanction was not warranted. Unlike the district court, we do not view such a sanction as an "intermediate" one. We therefore vacate the default and remand to the district court for further proceedings, after

-24-

which the court may make additional findings with respect to the need for additional sanctions beyond the fee sanction already granted (and if so, the nature of the sanction that it deems appropriate).

## B. Companion's Cross-Appeal

Companion cross-appeals the district court's order declining to amend the judgment to impose an award of prejudgment interest on a portion of the damages, as well as the original judgment "so unamended." The jury awarded Companion a total of $1,043,509 in contract damages,[23] an amount greater than Companion had argued it suffered in lost profits. The district court therefore imposed prejudgment interest only on the portion of the award that Companion had requested, or a total of $957,429.[24]

Companion moved to amend the judgment under Federal Rule of Civil Procedure 60(a), which allows a district court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." A Rule 60(a) motion may only be granted where "the judgment failed to reflect the court's intention." Bowen Inv.,

---

[23] The jury awarded $968,036 in damages with regard to the Master Agreement, $11,541 with regard to the Zanesville Agreement, and $63,932 with regard to the Evansville Agreement.

[24] This is the sum of $905,729 on the Master Agreement, $7,775 on the Zanesville Agreement, and $43,932 on the Evansville Agreement. This amounts to $86,073 less than the total damages awarded by the jury.

Inc. v. Carneiro Donuts, Inc., 490 F.3d 27, 29 (1st Cir. 2007) (internal quotation marks omitted). Here, Companion argues that Massachusetts state law provides for prejudgment interest on the full amount of damages awarded. See Mass. Gen. Laws ch. 231, § 6C. However, the district court found that the damages awarded above and beyond the lost profits requested amounted to an award for attorney's fees, and therefore intentionally awarded prejudgment interest on only part of the award. The district court's determination that Companion was not entitled to prejudgment interest on damages above and beyond the amount requested for lost profits was a "deliberate choice of the district judge reflect[ing] an interpretation of law which, even if erroneous, cannot be corrected under Rule 60(a)." Elias v. Ford Motor Co., 734 F.2d 463, 466 (1st Cir. 1984).

However, although styled as a motion under Rule 60(a), "a post-judgment motion made within ten days of the entry of judgment that questions the correctness of a judgment is properly construed as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e)." Global NAPs, Inc. v. Verizon New Eng., Inc., 489 F.3d 13, 25 (1st Cir. 2007) (internal quotation marks omitted). We therefore consider the motion to have been filed pursuant to Rule 59(e) and review the district court's denial for abuse of discretion, reversing only where "the original judgment evidenced a manifest error of law . . . or in certain other narrow

situations." Id. We also review the district court's determination regarding the award of prejudgment interest in the initial judgment for abuse of discretion, "but legal issues relating to the prejudgment interest award are reviewed de novo." Analysis Grp., Inc. v. Cent. Fla. Inv., Inc., 629 F.3d 18, 24 (1st Cir. 2010).

Under Massachusetts law, in most circumstances, prejudgment interest is not awarded for attorney's fees, even where the attorney's fees are provided for in a contract. See Interstate Brands Corp. v. Lily Transp. Corp., 256 F. Supp. 2d 58, 63 & n.3 (D. Mass. 2003) (noting that Mass. Gen. Laws ch. 231, § 6C does not impose prejudgment interest where "attorneys' fees . . . are not really an element of 'damages' flowing from breach but rather an additional right of recovery incident to that breach which vests when a party successfully takes action to enforce its rights"). This is exactly the situation which presents itself here, and is in contrast to a context where, for example, an insurance company violates a contract based on its failure to perform its duty to defend, such that attorney's fees are "part and parcel of 'damages' for breach of contract." Id. at 63 (citing Sterilite Corp. v. Cont'l Cas. Co., 494 N.E.2d 1008 (Mass. 1986)). Because the district court considered the damages awarded in excess of the amount demanded by Companion to be attorney's fees, there was no error of law in declining to award prejudgment interest on that

portion of the award, and therefore no abuse of discretion.  We decline to disturb the ruling of the district court on prejudgment interest.

### III. Conclusion

It remains within the sound discretion of the district court to decide whether to consider further the adoption of a default sanction on the veil piercing issue, some other sanction such as attorneys' fees for unnecessary delays and failure to complete discovery, or any other measure deemed appropriate; and, of course, any sanction ultimately imposed should be accompanied by appropriate findings.  Assuming that the issue is not one that can be otherwise resolved, a trial on the veil piercing count may be necessary.

The district court committed no error in declining to award prejudgment interest on the attorney's fees owed to Companion, so as to its cross-appeal, we affirm.

Each party shall bear its own costs.